378 So.2d 868 (1979)
Roland R. CARLSON and Sharon Carlson, His Wife, Appellants,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 79-28.
District Court of Appeal of Florida, Second District.
December 21, 1979.
Roland R. and Sharon Carlson, pro se.
Jim Smith, Atty. Gen., and Shirley A. Walker, Asst. Atty. Gen., Tallahassee, for appellee.
SCHEB, Judge.
The trial court terminated the parental rights of appellants, Sharon E. Carlson and *869 Roland R. Carlson, and permanently committed Pamela, Roland, Jr., and Eric Carlson and Jason Carr to the Department of Health and Rehabilitative Services (HRS) for adoption. The Carlsons contend that failure to comply with the requirements imposed upon Sharon Carlson and her former husband, Eugene Clayton Carr, by HRS was an insufficient basis for the court's judgment terminating the Carlsons' parental rights. The Carlsons assert that a decision terminating parental rights must include a consideration of the parental relationship in the current family unit, and that HRS failed to meet its burden of proof in this regard. We agree, and hold that it was error for the court to sever the Carlsons' parental rights.
Between 1968 and 1972 appellants, Roland R. Carlson and Sharon E. Carlson had three children, Pamela, Roland, Jr., and Eric. The children are now eleven, nine and eight years of age respectively. Subsequently, Sharon married Eugene Clayton Carr, and they had one son, Jason, now age five. In late 1976 Eugene Carr lost his job because of a physical disability suffered while working. He did not obtain disability benefits for two years, and the problems which developed in the marriage led to a series of separations. On January 10, 1977, Sharon placed Roland, Jr. and Eric in the custody of HRS because she was no longer financially capable of caring for them. On April 4 she also placed Pamela and Jason with HRS. The Carrs permanently separated in late 1977.
After the breakup of her marriage to Eugene Carr, Sharon resumed her relationship with Roland Carlson. Sharon and Roland were not able to marry until November 1978 following entry of the final decree dissolving Sharon's marriage to Eugene Carr on October 30, 1978.
Prior to Sharon's marriage to Carlson, Sharon and Eugene Carr, while still cohabiting, entered into an agreement with HRS in November 1977.[1] This agreement required the Carrs to meet several prerequisites before HRS would recommend that the children be returned to them.[2] HRS required this compliance by March 26, 1978.
On September 12, 1978, HRS petitioned for permanent commitment of the four children. Although Eugene Carr did not appear at the November 16, 1978 hearing, Roland and Sharon Carlson appeared and contested HRS' petition. HRS presented evidence showing that during the time that Sharon Carlson was married to Eugene Carr, Sharon and Eugene Carr failed to comply with the requirements of their agreement with HRS. Further, HRS presented evidence that Roland Carlson had experienced problems of alcohol abuse and had failed to support the children while they were in the custody of Sharon and Eugene Carr and HRS. The Carlsons presented evidence of their attempts to comply with the conditions established by HRS for compliance by Sharon and Eugene Carr. They also attempted to show their present competency as parents. Nevertheless, the trial court found Roland and Sharon Carlson to be unfit parents. This appeal by the Carlsons ensued.
The right to the integrity of the family is among the most fundamental rights. In re R.W.H., 375 So.2d 321 (Fla.2d DCA 1979). Thus, the right of a parent to the custody of his or her children can be severed only on a finding supported by clear and convincing evidence "that the parent has abandoned, abused, or neglected the child ..." and "that it is manifestly *870 to the best interest of the child . ." to sever parental rights. Torres v. Van Eepoel, 98 So.2d 735 (Fla. 1957); §§ 39.41(1)(d) 1.a.(I), (1)(d)b., Fla. Stat. (1977).
The evidence before the court consisted primarily of testimony concerning the recommendations of HRS. At the hearing HRS presented nine expert witnesses, caseworkers, and social workers. Each witness, however, acknowledged a lack of familiarity with the Carlsons' current situation. Rather, each based her testimony on the conditions prevalent in the marriage of Sharon and Eugene Carr.
HRS conceded that it did not investigate the period from January to November 1978. Irrespective of the agreement between HRS and Sharon and Eugene Carr, HRS should have investigated and evaluated the circumstances in the Carlson household from December 1977 until the time when HRS petitioned to sever parental rights.
Since the evidence before the trial court did not include an evaluation of the current family unit of Sharon and Roland Carlson and their present competency as parents, we do not believe that it was sufficiently clear and convincing to require termination of their parental rights.
Accordingly, we affirm that part of the order of permanent commitment which terminates the parental rights of Eugene Clayton Carr as father of Jason Edward Carr. We reverse, however, those parts of the order which terminate the parental rights of Sharon Carlson to Jason Edward Carr, and the parental rights of Roland R. Carlson and Sharon Carlson to Pamela, Roland, Jr., and Eric. In order to enable HRS to investigate and evaluate the present living arrangements and other factors concerning eligibility of the Carlsons to gain custody of the children, we remand for a new hearing on the petition for permanent commitment and for such other proceedings as are consistent with this opinion. At the new hearing, the Carlsons, of course, may present evidence concerning the stability of their relationship and their ability to provide for the children. Pending the new hearing, the trial court, in its discretion, may conduct an expedited hearing on temporary visitation rights by the Carlsons with the children.
HOBSON, Acting C.J., and RYDER, J., concur.
NOTES
[1] We have not adopted HRS' nomenclature of "contract" to describe the agreement between the Carrs and HRS. While the use of such administrative tools may stimulate improvements in the family environment and encourage development of parenting skills, a decision to sever parental rights must be based on compliance with statutory criteria concerning the child's welfare and not on noncompliance with a so-called "contract."
[2] Specifically, the Carrs were required to stabilize their marriage, obtain counseling, make satisfactory arrangements for child care during working hours, attend parenting skills classes, achieve adequate income and obtain adequate housing, and pay child support while the children remained in the care of HRS.