443 So.2d 493 (1984)
IN the INTEREST OF W.D.N., II, C.N. and C.N., Minor Children.
Nos. 83-1426 to 83-1428.
District Court of Appeal of Florida, Second District.
January 13, 1984.
*494 Robert B. Bennett, Jr., Sarasota, for appellant.
R. John Cole, II, of Stevs, Busch & Cole, Sarasota, for appellee.
LEHAN, Judge.
This is an appeal by a mother from a final order terminating her parental rights and permanently committing her three children, W.D.N., II, C.N., a male, and C.N., a female, to the Department of Health and Rehabilitative Services (HRS) for adoption. We affirm.
Although "the right to the integrity of the family is among the most fundamental rights," Carlson v. State, Department of Rehabilitative Services, 378 So.2d 868, 869 (Fla. 2d DCA 1979), a parent's rights are "subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail." In the Interest of J.L.P., 416 So.2d 1250, 1252 (Fla. 4th DCA 1982). In this case we agree with the trial court that the best interests of the children required the foregoing order.
Significant events surrounding this case include the following:
(1) The mother, Delores Neal, gave birth to five children, the eldest of whom had died in a fire in Quincy, Florida, prior to the events directly involved in this case. The father has abandoned the family.
(2) In November 1980 the second child, S.N., was adjudged dependent on a finding of child abuse and was permanently committed to HRS for adoption. The child abuse determination involved the six-month-old child having had at least ten bone fractures.
(3) In May 1981 another child of Ms. Neal, W.D.N., II, was adjudged dependent because he suffered from physical problems requiring medical treatment which the mother was unable to provide and because of the past abusive behavior of the mother toward S.N.W.D.N., II, had been born with tubercular meningitis.
(4) In May 1982 Ms. Neal gave birth to the twins, C.N., a male, and C.N., a female.
(5) In December 1982 the twins were adjudged dependent and committed to HRS upon a finding of child abuse toward C.N., the male, and the past abusive behavior toward S.N. The child abuse determination as to C.N. involved the four-month-old child having had three rib fractures.
(6) In October 1982 a psychiatric examination of the mother reaffirmed an earlier doctor's report that (a) the mother was a poor candidate for individual therapy to teach her parenting skills because she had a limited intellectual capacity, and (b) the mother was "only capable of marginal care for herself and has few resources left over to provide nuturance [sic] and care for a young child."
(7) In February and March, 1983 petitions for permanent commitment of W.D.N., II, C.N. the male, and C.N., the female, were filed by HRS.
(8) In May 1983 following a hearing the trial court awarded permanent custody of W.D.N., II and the twins to HRS.
The statute governing permanent commitment of children to HRS is section 39.41(1), Florida Statutes (1981), which includes the following provisions:
(1) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to:
* * * * * *
(f)1. Permanently commit the child to the department or a licensed child-placing agency willing to receive the child for subsequent adoption if the court finds that it is manifestly in the best *495 interests of the child to do so, and: (a) If the court finds that the parent has abandoned, abused, or neglected the child; ... .
A finding of child abuse in support of a dependency determination and temporary commitment satisfies the statutory element of abuse in a subsequent proceeding for permanent commitment and severance of parental rights. See In the Interest of C.M.H., 413 So.2d 418, 423-24 (Fla. 1st DCA 1982). Therefore, for purposes of the May 1983 permanent commitment hearing, the abuses of C.N., the male, and S.N. were established at the dependency determinations of December 1982 and November 1980, respectively. Those prior dependency findings of child abuse were applicable at the permanent commitment hearing even though the standard of proof required for permanent commitment  clear and convincing evidence  is greater than that for temporary commitment  a preponderance of the evidence. Id. at 424-5. Since the child, upon an initial dependency finding and temporary commitment, is removed from the home, there could be no further child abuse between the time of the initial dependency hearing and the permanent commitment hearing.
The mother does not argue whether or not findings of child abuse against some of her children may be grounds for permanent commitment of her other children. Nonetheless, it should be noted that, having in mind the foregoing overriding principle, under the facts of this case we believe a parent's abuse of some of her children may constitute grounds for the permanent commitment of her other children who also live with the parent. Section 39.01(2), Florida Statutes (1981), defines "abuse" as "any willful act that results in any physical, mental or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." To continue to expose children to abuse by a parent simply because findings of prior abuse by the parent only concerned others of the parent's children would constitute an unacceptable risk to the children where, as here, the mother's propensities in that regard were shown to be beyond reasonable hope of modification. The trial court specifically found that each of the three children who were permanently committed in the proceedings now on appeal "is, or potentially is, an abused child." As stated above, prior findings of child abuse concerned C.N., the male, and another child, S.N., who had previously been permanently committed.
Accordingly, the determination to be made at the permanent commitment hearing, which followed prior, separate temporary commitment proceedings where child abuse was found, was whether permanent commitment, by clear and convincing evidence, was shown to be manifestly in the best interests of the children. C.M.H. at 425. The trial court so found, and we agree that the requisite standard of proof was met. The trial court's determination was made with the benefit of an extensive exposition of relevant factors. It is clear from the record that the mother's interests were well represented.
The testimony and evidence established that the mother had been counseled by HRS for parenting problems, that she had not benefited from that counseling, and that there were no more programs in the state which could help the mother. She had been administered all of the potentially helpful programs which were available through the time of the December commitments. The testimony established that the mother did not admit that she had a problem. There was substantial testimony that the mother's low intellectual capacity in all likelihood prevented her from benefiting from counseling. There was expert testimony as to a high risk of additional child abuse if the children returned home. Therefore, the evidence supported a conclusion that the only way to ensure that the mother would not harm her children henceforth was to commit the children permanently to HRS.
We recognize that the testimony also showed that during the mother's visits with the children she exhibited love, care, concern *496 and affection for the children. She requested more visits with the children and was angry when this was denied.
The mother argues that since an in-home investigation had not been conducted regarding her most current living situation and ability to provide a proper and fit home, the order of permanent commitment should be reversed. In Carlson, supra, this court reversed the termination of parental rights when HRS had not evaluated the living conditions of the parents from the time of the initiation of temporary custody by HRS over the children until HRS petitioned to sever parental rights (a period of approximately ten months). Id. at 870.
Carlson is markedly different in several respects from the case now before us. First, the mother in Carlson voluntarily committed her children because she was financially unable to care for them. In the instant case, the children were taken from the mother because of her physical abuse. Second, the home living situation in general, and the financial plight of the family in particular, were the issues in Carlson. Those factors were not the issues here. Finally, in Carlson there was a definite change of circumstances which the mother was attempting to prove in order to show her ability to be a fit parent. Therefore, a recent evaluation was critical to her position. In the instant case, the mother does not argue that there has been any change which would affect her propensities regarding child abuse. She therefore does not indicate prejudice from the failure of HRS to make a recent home investigation.
The facts here are somewhat analogous to those of In re Interest of J.L.P., supra. In that case, HRS received permanent custody of the mother's son on findings, inter alia, that the mother had no means of support, questionable housing, and a past history of alleged child abuse. The mother was of extremely limited intellectual capacity, was classified as "trainably retarded," and was unable to think in terms of the child's welfare. J.L.P. at 1251-52. The Fourth District Court of Appeal affirmed the trial court's decision, saying that in section 39.001(3), Florida Statutes (1979), it was the legislature's intent that
the Florida Juvenile Justice Act be liberally construed so as to effectuate its purpose. Section 39.001(2), Florida Statutes (1979), states that one of those purposes is "to assure to all children brought to the attention of the court ..., the care, guidance, and control ... which will best serve the moral, emotional, mental, and physical welfare of the child.
Id. at 1252.
Judge Glickstein's comments in J.L.P. reflect our feelings here:
Our sympathy for the mother cannot blind us to the overriding concern for the welfare of the child. We can not help the one and shall not harm the other.
Id. at 1253.
AFFIRMED.
OTT, C.J., and BOARDMAN, J., concur.