GLICKSTEIN, Judge.
The question here is as old as that posed to Solomon; namely, what is to become of the child. While none of us as reviewing judges may be possessed of that sage’s wisdom, we have the benefit of a carefully considered judgment entered by the acting circuit judge, who determined that the ten year old boy whose future is our concern should be permanently committed to HRS, based upon the following findings and conclusions:
1. That the child ... has been abused and neglected by his natural mother ... in that she failed to provide proper supervision, maintenance and care, and that she did allow him to be exposed to drug usage.
2. That [the child] is, at this time, in need of a stable home environment to prevent further physical, mental and emotional health impairment.
*342 3. That the mother ... has failed to rehabilitate and is unable to provide proper home environment, parental supervision, maintenance and care of said child; that the mother ... has further failed to complete the requirements of the Performance Agreement entered into with the Department of Health and Rehabilitative Services on February 5, 1981.
And the Court FURTHER FINDING that it is manifestly in the best interest of said child to permanently commit said child to the agency hereinafter named for subsequent adoption, said agency being authorized under the laws of the State of Florida to receive permanent commitment of said child and place said child in an adoptive home to consent to the adoption of said child, and that said agency is willing to receive said child; that no legal custodian has been appointed by any Court for said child. (Emphasis added)
IT IS, THEREFORE, ORDERED that said child is hereby adjudged to be a dependent child; that said child is hereby permanently committed to the Florida Department of Health & Rehabilitative Services for subsequent ADOPTION.
Those involved in child advocacy have labored long and hard to make the judicial, executive and legislative leaders throughout our nation aware of the specific needs of children. The battle for conscious awareness has been waged with all of the energy, labor and determination characteristic of an uphill climb. As the late President John F. Kennedy reminded us, it is better to light a candle than to curse the darkness. Candles are being lit to eliminate a dark way, and as they illumine the nurturing of children, the slope appears less steep. At the national level, the Adoption Assistance and Child Welfare Act of 1980, the Senate Caucus and the House Select Committee illustrate the attention children are finally getting so that each child can have the opportunity to grow and live. In Florida, the Governor has created his Constituency for Children; the legislature continues to refine and improve statutory recognition and awareness; and the judiciary contributes sensitive opinions as in In the Interest of W.D.N., II, C.N. and C.N., 443 So.2d 493 (Fla.2d DCA 1984); and Carnrike v. Department of Health & Rehabilitative Services, 442 So.2d 1093 (Fla. 5th DCA 1983). The effort to provide each child with roots and wings grows and gathers sensitive support.
In the present case, the two-pronged judgment determined that this unfortunate mother is unable to provide the proper environment for her child and had not completed the requirements of the performance agreement into which she had entered with HRS. The record before us supports the trial judge’s determination; and there is no legitimate basis for us to substitute our judgment for his; which statement may be no more than rhetoric. What is not rhetorical, however, is that when we read this record we come away with the feeling that while life may have shortchanged the mother for the last several years, causing her two children respectively to be placed in an abysmal environment, the trial judge’s judgment permits this child an environment the mother cannot provide.
Our closing thought is an observation about the split decision of our companion court in In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA 1983) and of its author, Judge Robert Smith, whose leaving the bench at the end of 1983 we view as most unfortunate and a great loss to the people of Florida. The court in that case recognized, as this court did in In the Interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982) that either neglect or abuse may be proved prospectively. However, we feel our companion court viewed parental performance agreements provided by Section 409.168, Florida Statutes (1981) as only two dimensional; i.e. if the parent performed, the child is to be returned; and if not, the child is to be committed for adoption. The interest of a child, however, like the Hope Diamond, is multidimensional, and other alternatives, such as long *343 term foster care or independent living must be a consideration. Children are not cards to be placed in slots. Their needs require imaginative flexibility, not slavish categorization. We simply cannot engage in tunnel vision when a child’s welfare is at stake; every reasonable option must be available. In the case before this court, the parent did not perform, so we are not faced with consideration of alternatives. Let us hypothesize, however, that notwithstanding complete performance by the parent, objective investigation still revealed substantial reasons not to return the child to the parent. We need not be prisoners of our self-constructed intellectual walls, nor can we be, when a child is involved, just because “a deal’s a deal.” The child never signs the performance agreement and the court never sees it until review is sought. An agreement so executed by adults can not fetter the court, whose primary concern must be the child.
HURLEY, J., concurs.
WALDEN, J., dissents with opinion.