455 So.2d 598 (1984)
In the Interest of L.R.R. and M.A.R., Children.
Pamela RUSSELL, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 83-1640.
District Court of Appeal of Florida, Fifth District.
September 6, 1984.
David G. Conn, St. Augustine, for appellant.
Jim Smith, Atty. Gen., and James W. Sloan, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Pamela Russell, the natural mother, appeals from an order terminating parental rights and committing her two children to the Department of Health and Rehabilitative Services for adoption. She contends the court erred in terminating parental rights because HRS made no investigation into her current living arrangement and her competency to be a parent. She also contends that the court was required to consider a predisposition report under section 39.408(2), Florida Statutes.
*599 Russell is twenty-one years old and illiterate. In April, 1980, the children, then one and one-half and two and one-half years of age, respectively, were found to be dependent and were committed to the custody of HRS because Russell was unable to care for them as she had been committed as a juvenile offender. Since May of 1980, the children have been in foster care.
In entering into a performance agreement with HRS in December, 1980, Russell indicated a desire to have her children returned to her within six months. She agreed to attend counseling, obtain employment or attend vocational training, and acquire adequate housing.
In August, 1983, HRS filed a petition for permanent commitment charging that Russell failed to comply with the performance agreement and had neglected the children. At the hearing below, the HRS case worker testified to Russell's failure to meet the terms of the performance agreement and further testified that Russell failed to visit the children between December, 1981 and August, 1983, even though under the terms of the agreement she was to visit with them once a month. The case worker opined that in light of Russell's lack of interest, the best interests of the children, now ages five and six, would be served by permanent commitment. The case worker admitted on cross-examination, however, that she did not know who Russell was currently living with and had not visited Russell in a home environment for approximately nine months.
Russell called three witnesses, her grandmother, sister and father. They testified that Russell was currently living in a two-bedroom trailer on the grandmother's property in anticipation of the return of the children and that she had a positive change in attitude and lifestyle over the past few months. They added that they would be willing to assist in caring for the children though none of them had close contact with the children while they had been with HRS.
The trial court found that Russell, while resisting the petition for permanent commitment over the past few months, had previously shown no inclination or desire to obtain custody of her children. The court found that Russell showed no interest in the children for most of the three years they were under HRS custody and ignored the terms of the performance agreement.[1] The court concluded that Russell's conduct amounted to abandonment, see sections 39.01(1), 39.41(1)(f)1, Florida Statutes (1983), and that the best interests and welfare of the children would be served by permanent commitment.[2]
Russell argues that clear and convincing evidence to support termination of parental rights[3] was not present here because of the absence of a current HRS investigation. She relies on Carlson v. State, Department of HRS, 378 So.2d 868 (Fla. 2d DCA 1979), wherein the Second District reversed an order terminating parental rights because HRS had not evaluated the living conditions of the parents from the time of the initiation of temporary custody by HRS over the children until HRS petitioned to sever parental rights, a period of approximately ten months. The court stated:
Since the evidence before the trial court did not include an evaluation of the current family unit of Sharon and Roland Carlson and their present competency as parents, we do not believe that it was sufficiently clear and convincing to require *600 termination of their parental rights.
378 So.2d at 870.
In the recent case of In the Interest of W.D.N., 443 So.2d 493 (Fla. 2d DCA 1984), the Second District reviewed an order terminating parental rights based on a finding of child abuse. The mother argued on appeal that under Carlson, error had been committed since an in-home investigation had not been conducted regarding her current living situation and ability to provide a proper and fit home. The court rejected this claim, finding that the mother was not prejudiced by the failure of HRS to make a recent home investigation. 443 So.2d at 496. The court distinguished its earlier opinion in Carlson as follows:

Carlson is markedly different in several respects from the case now before us. First, the mother in Carlson voluntarily committed her children because she was financially unable to care for them. In the instant case, the children were taken from the mother because of her physical abuse. Second, the home living situation in general, and the financial plight of the family in particular, were the issues in Carlson. Those factors were not the issues here. Finally, in Carlson there was a definite change of circumstances which the mother was attempting to prove in order to show her ability to be a fit parent. Therefore, a recent evaluation was critical to her position. In the instant case, the mother does not argue that there has been any change which would affect her propensities regarding child abuse. She therefore does not indicate prejudice from the failure of HRS to make a recent home investigation.
Id.
We believe that Russell has not been prejudiced by HRS' failure to conduct an in-home investigation as to her current living situation and ability to provide a proper and fit home. Unlike in Carlson, Russell did not voluntarily commit her children because she was financially unable to care for them but rather, they were adjudged dependent because Russell had been placed in a juvenile detention center. More importantly, the overriding issue here concerns abandonment or Russell's lack of a genuine interest, as exhibited over almost a two-year period, in her children. While it is true that in the present case, as in Carlson, Russell was trying to show a change in circumstances which would indicate her ability to be a fit parent, and a current investigation would be significant in this regard, all the pertinent witnesses testified before the trial judge as to Russell's current living situation and ability to provide a proper and fit home. Russell has not shown how a more recent HRS investigative report would have added anything to consideration of the issues under these circumstances. There is sufficient evidence to support a finding of abandonment: a remand would serve only to delay the inevitable.[4]
As to the court's failure to consider a predisposition report, while in In the Interest of R.A.L., 440 So.2d 473 (Fla. 5th DCA 1983), this court did order reversal of an order of permanent commitment because the trial court failed to consider the statutorily required predisposition report, see section 39.408(2), Florida Statutes (1983),[5] that case involved a dependency *601 petition and the court concluded that termination of parental rights was justified. In the instant case, the dependency action occurred in April, 1980 and it was following the adjudication of dependency that the predisposition study was to be considered by the court.
AFFIRMED.
COBB, C.J., and SHARP, J., concur.
NOTES
[1] The court noted that even at the hearing, Russell showed no "emotion or desire to receive her children" and showed no real concern for them. The court labeled her request to receive the children back as being "bland."
[2] The trial court observed that the children seemed content with their foster parents and that the foster parents planned to adopt them when the commitment proceedings were concluded.
[3] See, e.g., Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Hinkle v. Lindsey, 424 So.2d 983 (Fla. 5th DCA 1983); In the Interest of C.M.H., 413 So.2d 418 (Fla. 1st DCA 1982).
[4] As to Russell's apparent renewed interest in the children since filing of the petition for permanent commitment, we agree with the Second District's observation in In the Interest of R.V.F., 437 So.2d 713, 714 (Fla. 2d DCA 1983), that "this cannot make up for the lengthy omission of support and communication which preceded the filing of the petition." See also In the Interest of K.A.F., 442 So.2d 365 (Fla. 5th DCA 1983).
[5] Section 39.408(2), provides as follows:

DISPOSITION HEARING.  The court finds that the facts alleged in the petition for dependency are proven in the adjudicatory hearing. At the disposition hearing, the court shall receive and consider a predisposition study, which shall be in writing and be presented by an authorized agent of the department. The predisposition study shall cover for any dependent child all factors specified in s.61.13(3). A copy of this report will be furnished to the person having custody of the child at the time such person is notified of the disposition hearing. If placement of the child with anyone other than the child's parent or custodian is being considered, the study shall include the designation of a specific length of time as to when custody by the parent or custodian will be reconsidered. This study shall not be made prior to the adjudication of dependency unless the parents or custodians of the child consent thereto. Any other relevant and material evidence, including other written or oral reports, may be received by the court in its effort to determine the action to be taken with regard to the child and may be relied upon to the extent of its probative value, even though not competent in an adjudicatory hearing.