SCHEB, Acting Chief Judge.
Appellants, the parents of C.G., their six-year-old daughter, challenge the trial court’s determination that C.G. is a dependent child and its subsequent order of disposition refusing to reunite their daughter with them. We affirm the adjudication of dependency but remand for a further disposition hearing.
The Department of Health and Rehabilitative Services (HRS) filed a dependency petition alleging that C.G. had been sexually abused by her father and was a dependent child within the meaning of chapter 39, Florida Statutes (1985). The appellants denied the allegations. On October 28, 1985, the trial court found that C.G. was a dependent child under the law and requested HRS to prepare a disposition report. After a disposition hearing, the court, on November 19, released C.G. to the custody of HRS.
In January 1986, HRS pursuant to section 409.168(3), Florida Statutes (1985), submitted a performance agreement for appellants’ review. The proposed agreement identified five tasks for appellants to accomplish to assure C.G.’s return to them: (1) submit to alcohol evaluation; (2) engage in counseling to overcome the denial of the sexual abuse; (3) when appropriate, enter counseling in FACE (a sexual abuse program) to overcome the problem of sexual abuse; (4) provide all necessary medical and educational support to C.G., as well as consistent and positive support throughout C.G.’s placement and foster care; and (5) assist HRS in investigation of appropriate placement of C.G. with relatives. Appellants were unable to perform tasks (2) and (3) because they would not admit the abuse occurred, and thus were ineligible for FACE counseling. Because of appellants’ inability to comply with the performance agreement, they declined to sign it, and HRS submitted a permanent placement plan on January 16, pursuant to section 409.168(4)(a).
At a hearing on February 3, HRS requested that the court accept the permanent placement plan in lieu of the performance agreement. At this hearing, the trial judge stated that any reference in the performance agreement to appellants admitting or denying the sexual abuse should be deleted, and appellants should engage in good faith counseling. The judge acknowledged the appellants had complied with task (1) as written and stated that unless HRS obtained additional information about the alcohol abuse, that matter should be left alone. Further, appellants informed the trial judge and HRS that they were willing to comply with tasks (4) and (5) of the performance agreement. Subsequently, on February 5, the court entered an order accepting the permanent placement plan as proposed by HRS but with the modifications discussed at the February 3 hearing. The permanent placement plan had as its stated goal the return of C.G. to her natural parents, the appellants.
In early May, appellants provided names and addresses of C.G.’s relatives for possible placement, as requested. Thereafter, HRS filed a report requesting the trial court to allow the father supervised visitation with C.G. and asking that the permanent placement plan be continued for an additional ninety days. Notwithstanding the trial court having previously deleted any reference to the denial of sexual abuse from the performance agreement as discussed at the February 3 hearing, HRS reported that the major area of noncompliance with the permanent placement plan involved the appellants’ continued denial of the sexual abuse allegations against the father. Appellants’ denial, HRS noted, resulted in their inability to successfully participate in a sexual abuse program.
On May 12 the trial court conducted the initial six-month judicial hearing to review the status of C.G. § 409.168(4), Fla.Stat. (1985); § 409.168(5)(c)(l), Fla.Stat. (1985). The court concluded that matters of appellants’ visitation with C.G. should be left to *1133 the guardian ad litem, HRS and a psychologist who had previously evaluated the appellants. On May 28 the court extended the permanent placement plan until August 31. In direct conflict with his actions at the February 3 hearing, the trial judge’s order stated that the appellants had not complied with the permanent placement plan because they had not overcome their denial of the father’s sexual abuse of C.G. As a result of this denial, the court observed, appellants had been unable to participate in a sexual abuse treatment program.
Two days after the court extended the permanent placement plan, HRS recommended to the trial court that C.G. be given an extended in-home visitation with her half-sister, Cynthia Evans, at a friend’s home in Ft. Myers, Florida. Then on June 20, it recommended that the child be temporarily relocated to Ms. Evans’ residence in Germany. Appellants renewed their request for the return of C.G. to their custody with counseling or, alternatively, for the court to allow their child to return to the mother with the stipulation that the father maintain a separate residence.
On July 3, the court entered an order of disposition continuing C.G.’s status as a dependent child. Following HRS’s recommendation, the court gave temporary custody to Cynthia Evans, who was allowed to return to Germany with C.G., where Ms. Evans and her husband plan to remain until August 1987. In denying appellants’ motion for rehearing, the trial court modified its previous order to permit appellants to contact C.G. by telephone, and to provide that should appellants visit Germany, they would be allowed supervised visitation with their child. Finally, the court ordered the case be reviewed in six months. From the court’s order of July 3, as amended, this appeal ensued.
Appellants seek reversal of the court’s determination that C.G. is a dependent child. Additionally, they contend the court erred in entering its disposition order. In support of their first contention, appellants argue there was insufficient evidence to sustain the court’s finding that the father had sexually abused the child. On this point, they urge that the court erred in admitting evidence of similar occurrences of sexual abuse involving the father and two of his older daughters when they were quite young. Appellants also contend they were denied procedural due process because they were not furnished the guardian ad litem’s report before the initial disposition hearing.
We begin our analysis by observing that in making its determination that C.G. was sexually abused by her father, the trial court reviewed a video taped interview with the child. No attack was made on the child’s competency to testify, and appellants and appellee agreed to the admission into evidence of the video tape. The court heard additional evidence, including testimony of similar occurrences of sexual abuse by appellant father involving C.G.’s half-sisters when they were quite young. Those incidents, like the complained of conduct in this case, occurred when the mother was either sleeping or not present. Appellants contend the trial court erred in admitting such evidence. We think, however, this evidence was relevant to the appellant father’s lack of inadvertence and to establish that he had the opportunity to commit such acts. § 90.404(2)(a) Fla.Stat. (1985); see Potts v. State, 427 So.2d 822 (Fla.2d DCA 1983); Hodge v. State, 419 So.2d 346 (Fla.2d DCA 1982); Beasely v. State, 503 S.2d 1347 (Fla. 5th DCA 1987).
The evidentiary standard in a dependency hearing is preponderance of the evidence. § 39.408(2)(b), Fla.Stat. (1985). We find substantial competent evidence in the record to support the trial court’s finding that C.G. is a dependent child. We have not overlooked appellants’ contention that they were denied procedural due process because of the court’s consideration of the guardian ad litem’s report which was not furnished to appellants. The guardian ad litem was present at the disposition hearing on November 18, 1985, and was asked to contribute her comments. Appellants, however, did not seek to examine her. Moreover, they were given a copy of the HRS predisposition report and respond *1134 ed to it in writing. That report was substantially similar to the guardian ad litem’s report. While we agree the parents were entitled to review the guardian ad litem's report, see, e.g., Kern v. Kern, 333 So.2d 17 (Fla.1976), under the circumstances, failure to provide them with the report was harmless error.
Having rejected appellants’ arguments concerning the court’s finding that C.G. is a dependent child, we now turn to their contention that the court erred in entering its disposition order of July 3, as amended. Since they claim to have been in substantial compliance with the terms of the permanent placement plan, as modified by the court, they fault the trial court for not allowing them the opportunity to reunite with their child.
In reviewing appellants’ contention on this point we are mindful that the right to the integrity of the family is among the most fundamental rights. Carlson v. State Department of Rehabilitative Services, 378 So.2d 868 (Fla. 2d DCA 1979). Yet, we also realize that the parents’ rights must sometimes yield to the ultimate welfare of their child. In the Interest of W.D.N., II, C.N. and C.N., 443 So.2d 493 (Fla. 2d DCA 1984).
As noted, HRS initially offered the appellants a performance agreement as mandated by section 409.168(3)(a). The stated purpose of this type of agreement is to ensure permanency for children through recording the actions to be taken by the parties involved in order to quickly assure the safe return of the child to his or her parents. § 409.168(3)(a). Thus, the legislature has mandated that when the court declares a child dependent, the social service agency responsible for the foster home placement is required to prepare a performance agreement in conference with the natural parents. § 409.168(2), Fla.Stat. (1985). Recognizing the important role a performance agreement plays in child dependency proceedings, the Florida Supreme Court in Burk v. Department of Health and Rehabilitative Services, 476 So.2d 1275 (Fla.1985), and Gerry v. Department of Health and Rehabilitative Services, 476 So.2d 1279 (Fla.1985), has held that, as required by section 409.168, a performance agreement must be prepared whenever a social service agency obtains custody of a dependent child.
In essence, a performance agreement is designed to afford the parents the opportunity to improve their parenting and interpersonal skills so that the family can be reunited. Such an agreement is to expire no later than eighteen months from the date the child was initially ordered into foster care, if involuntarily placed, § 409.-168(3)(b), and in such instances, a third judicial review of the child’s status is to be held no later than 18 months from the date the child was initially ordered into foster care. Here, C.G. was initially involuntarily placed in foster care on November 18,1985. Therefore, the performance agreement would ordinarily have expired and a review would have been held by May 18, 1987. Upon expiration of the performance agreement, the court is required to return the child to the natural parents, provided the parents have substantially complied with the agreement. § 409.168(5)(h)(2), Fla.Stat. (1985).
If reunification is not possible, then the objective of the performance agreement is to permanently commit the dependent child to HRS or a licensed child-placing agency for the purpose of finding a permanent adoptive home. § 409.168(3)(a) Fla. Stat. (1985). Since appellants were willing to enter a performance agreement as modified by the court, reunification in this case should have been attempted and hopefully accomplished under a performance agreement, rather than under a permanent placement plan. Burk; Gerry. Section 409.-168(4)(a) provides that a permanent placement plan is to be offered to the parents only in the event the parents cannot or will not participate in preparation of a performance agreement. Thus, the trial court erred by not offering the appellants a performance agreement incorporating the requirements identified by HRS as modified *1135 to conform with the court’s ruling at the February 3 hearing.
Accordingly, we affirm the trial court’s finding that C.G. is a dependent child, but we remand with directions to the court to have HRS prepare a performance agreement with the assistance of the appellants as required under section 409.168(2)(g). The performance agreement should set forth the tasks previously identified by HRS as modified by the court at the February 3 hearing. The performance agreement should be made retroactive to the February 3, 1986, hearing and should be submitted to the appellants for their signature in accordance with section 409.-168(2)(g).
Considering the time constraints in this case and realizing that the appellants have been effectively deprived of any visitation with their child, we direct the trial court to hold a further disposition hearing promptly after this decision becomes final. At the hearing, the court is to determine whether or not the appellants have substantially complied with the performance agreement as modified. The guardian ad litem should be directed to present an updated report and the parents should be given an opportunity in advance of the hearing to review it, so they may be guided accordingly in their preparation for the hearing.
If the court determines that the appellants have substantially complied with the revised form of performance agreement, then C.G. should be returned to her natural parents unless the court finds that it is in the best interest of the child not to do so. § 409.168(5)(h)(6), Fla.Stat. (1985); In the Interest of R.W.H., 447 So.2d 341 (Fla. 4th DCA 1984) (noting that a trial judge can still refuse to return the child to the parents, even if the parents have complied, if the court finds there are substantial reasons for the court’s actions). On the other hand, if the court finds the appellants have not complied with the terms of the performance agreement, then the court shall proceed appropriately pursuant to the sections under 39.41 and 409.168.
Affirmed in part; reversed in part; and remanded with directions.
CAMPBELL and SANDERLIN, JJ., concur.