SCHEB, Acting Chief Judge.
Deborah Jones, the mother of three young daughters, challenges the trial court’s order adjudicating them dependent under section 39.01(27), Florida Statutes (1985). We agree with the mother that there was insufficient evidence to support the adjudication. We reverse.
Deborah Jones and Robert Jones are the natural parents of L.J., age 2, and T.J., age 4. The marriage between Deborah and Robert was dissolved on January 19, 1987, and the court transferred matters concerning the dependency and custody of these two children to the Juvenile Division of the Court. Deborah is the mother and Robert is the stepfather of A.W., age 7.
On January 27, 1987, the Department of Health and Rehabilitative Services (HRS) filed a petition alleging that the parents “permitted the Children to live in an environment which causes the Child’s physical, mental or emotional health to be significantly impaired or to be in danger of being significantly impaired....” According to HRS, both Deborah and Robert had made allegations against the other of neglect and sexual abuse. They each entered a denial to the petition.
At the adjudicatory hearing HRS called three witnesses. The first, Dennis Michael Howald, an HRS intake worker, stated that the custody dispute between Deborah and Robert and their mutual allegations of sexual abuse and neglect had an adverse emotional effect on the children. The next, Rebecca Winkle, State Coordinator with the Child Protection Team, said she interviewed the children after Deborah had made a report to HRS that Robert had sexually abused her daughter, A.W. As a result of an interview with A.W. in which anatomical dolls were used, Ms. Winkle concluded that Deborah had cause to report to HRS that A.W. had been sexually abused by Robert. Finally, Edwina Jean Jones, a shelter parent, (no relation to the parents) corroborated Mr. Howald’s testimony that the children were continuously upset by the custody dispute and also said that A.W. was fearful of her stepfather.
The trial court entered an order on March 6, 1987, that:
based upon the evidence presented at the hearing ... and in particular the testimony of Edwina Jones, the Shelter Parent, the Court finds that said children are neglected children as defined in Florida Statute 39.01(27), in that the respondents have permitted the children to live in an *1142 environment which causes the children’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired....
The focus of the charges by HRS was that the ongoing custody dispute between Deborah and Robert and the allegations of sexual abuse by each against the other resulted in adverse emotional consequences to the children. At the adjudicatory hearing, however, Ms. Winkle’s testimony established that Deborah’s allegation against her then husband, Robert, was true. This, of course, legitimized her complaint to HRS, and she should not be penalized for that. On the other hand, the evidence established that the allegation of sexual abuse of T.J. by Deborah’s boyfriend in 1985 was unfounded. The remaining evidence dealt largely with the unsettling effects of the custody dispute on the children.
HRS contends that the implication of the trial court’s order is that Deborah’s complaints to HRS were groundless, that in effect Deborah filed a false report, and that the trial judge was free to reject the testimony of the agency’s child protection team coordinator. In light of the testimony presented by HRS, we can only characterize these contentions as very surprising.
The trial judge indicated in his order that he relied heavily upon the testimony of Ms. Jones, the shelter parent who related the children’s expressed apprehensions over the custody fight and the charges their parents were making against each other. Her testimony establishes that the parents had created an atmosphere of some turmoil and that these young children were upset in their new shelter environment. We think this insufficient to declare the children dependent children under Florida law. While the impact of a custody dispute varies in intensity, we think that in most cases it could be said to have definite emotional effects on young children.
The right to the integrity of the family is a fundamental right, In the Interest of C.G. v. State, Department of Rehabilitative Services, 506 So.2d 1131 (Fla. 2d DCA 1987); Carlson v. State, Department of Health and Rehabilitative Services, 378 So.2d 868 (Fla. 2d DCA 1979), yet we realize that the parents’ rights must sometimes yield to the ultimate welfare of their child. In the Interest of W.D.N., II, C.N. and CM, 443 So.2d 493 (Fla. 2d DCA 1984). With these principles in mind, we do not believe that the evidence in this case was sufficient for the court to adjudicate these children dependent.
As a final note, HRS acknowledges that admission of certain evidence concerning charges of bad character against Deborah and of a report containing a psychologist’s written observations was error. Nevertheless, it argues these rulings were harmless in a bench trial. While our decision disposes of the need to address these or Deborah’s other challenges to the admissibility of evidence, we caution trial judges to adhere to the rules of evidence in adjudicatory hearings.
We reverse the order of dependency.
SCHOONOVER and LEHAN, JJ., concur.