BOOTH, Judge,
dissenting.
I would affirm the judgment below terminating parental rights. The trial court made this difficult decision, and it is supported by the record showing that the statutory requirements of Chapter 39, Florida Statutes, were met.[1] Appellant is the biological father of the child born March 10, 1983. The child has suffered continual abuse and neglect all his life. The mother’s neglect has been the more blatant, and she has not appealed the termination of her parental rights.
Concerning the biological father, appellant herein, the trial court entered an order making the following findings:
The Petition [for Termination of Parental Rights] sets at issue concerning the father ..., concerning his son, [J.H.G., also known as J.S.G.], physical abuse toward the half-brother of [J.H.G.], [D.J.S.], for which the father was convicted and placed on probation, and inability to change his behavior toward [D.J.S.], or his own child, and neglect toward his child, and his failure to comply with two performance agreements, one of which was extended, even though able to do so....
[[Image here]]
Both children were adjudicated dependent by this Court on July 21, 1986, and ordered into foster care....
[[Image here]]
Both children are now and have been since before July 21, 1986, living in the *653 State of Florida in Okaloosa County and under jurisdiction of this Court and no other guardian has been appointed to care for these children other than by order of this Court.
[[Image here]]
On October 23, 1981, [the father], in a physical altercation with [the mother], hit [D.J.S., his stepson, then 18 months old], severely bruising his face in nine places.
Neither [the mother] nor [the father] took [D.J.S.] to the hospital for needed medical treatment until approached by their landlord ... that it was necessary to do so on the evening of October 24, 1981....
[The father] would regularly, about weekly, physically abuse [the mother] during the period of time that they were living together....
[The father] has a history of violence with a criminal conviction for child abuse, burglary, drug offenses, and an inability to comply with probation and community control standards....
[[Image here]]
... [J.H.G., appellant’s son], in July of 1986, when taken into foster care, was socially very far behind children of his own age group of 3V2 years. He is still behind his age group but is improving. At first he would whimper all of the time and he was not able to go to the bathroom without someone assisting him. He would sit and stare in space. At first he would have to be fed 80 percent of the time, but now has improved to where he will eat himself most of the time and only requires feeding by others 5 percent of the time. He has reduced the soiling of his pants and is now sleeping at night....
[The father], although able to do so, has not substantially complied with either performance agreement presented to him and agreed to by him....
[[Image here]]
... [The father] did not get an alcohol and drug evaluation nor a psychological evaluation as required by the performance agreement due to the reasons presented by him that he was either unable to afford to do so; even though he never sought to do so at the expense of the Department of Health and Rehabilitative Services, and that he was too busy to have it done....
Neither [the father] nor [the mother] will ever be able to give these children a stable permanent home necessary for these children to become productive adults....
[The father] was arrested as a juvenile for possession of marijuana and placed on 3 months probation. After that he began a long history of driving while intoxicated, driving while his license was suspended and disorderly intoxication between January, 1979, up to November, 1986....
[[Image here]]
... [Cjlearly and convincingly, the children have been abused and neglected by both [the father], the father of [J.H.G.], and ... the mother of both children.
The abuse and neglect of the children at the hands of both parents has occurred over a long period of time and is ingrained, with no reasonable likelihood of change. The abuse and neglect suffered by these children has occurred over a long and extended period of time and the only way to prevent this abuse and neglect from occurring again, is to terminate the parental rights between the parents and the children.
The court finds by clear and convincing evidence that it is in the manifest best interests of the children, [D.J.S.] and [J.H.G.], that they be permanently committed to the Department of Health and Rehabilitative Services for subsequent adoption.
Appellant's failure to comply with the performance agreements is evidence of continued neglect and abuse.[2] The trial *654 court was entitled to consider this factor,[3] as well as the evidence showing appellant’s violent and abusive temperament. True, the 18-month-old baby appellant struck repeatedly in the face was his stepson and not the child to whom he now asserts parental rights, but that fact can hardly be viewed as “mitigating.” Other circumstances relied on as mitigating were that appellant was intending to hit the mother, who was holding the child, it was dark, and he was drunk. The beating of the mother, which was repeated regularly during the years the parties lived together, was not accidental, and the striking of the child nine times, as reported by the emergency room, can hardly be viewed as an accident.
The trial court heard appellant’s explanations and excuses and also saw the photographs of record showing the baby’s face after being struck nine times. The judge was in the best position to view the credibility of appellant, including his asserted remorse. Appellant pleaded nolo contendere to child abuse and was placed on five years’ probation. There were other violent acts, and appellant was incarcerated on at least one occasion for drug possession during the period of probation on burglary and assault charges in April of 1987, only eight months prior to the hearing below. These facts support the trial court’s findings in his order, supra, concerning appellant’s history of violence.
Proof of abuse as to one child is valid evidence as to abuse to the other children, and a history of physical violence is evidence of prospective abuse. In In the Interest of W.D.N, 443 So.2d 493 (Fla. 2d DCA 1984), the State proved that the mother had abused two of her four children (one had been previously committed for adoption), and the court affirmed permanent commitment of the other children, holding (443 So.2d 495):
[I]t should be noted that, having in mind the foregoing overriding principle, under the facts of this case we believe a parent’s abuse of some of her children may constitute grounds for the permanent commitment of her other children who also live with the parent_ To continue to expose children to abuse by a parent simply because findings of prior abuse by the parent only concerned others of the parent’s children would constitute an unacceptable risk to the children where, as here, the mother’s propensities in that regard were shown to be beyond reasonable hope of modification. The trial court specifically found that each of the three children who were permanently committed in the proceedings now on appeal “is, or potentially is, an abused child.” (emphasis added)
The trial court in the instant case made similar findings.
Appellant contends that he was not given the same chance as the child’s mother to prove his fitness as a parent and that his probation restrictions against seeing the mother and his incarceration prevented him from exercising parental responsibilities and from completing one of the performance agreements. In Yem v. State, Department of Health and Rehabilitative Services, 462 So.2d 1147, 1149 (Fla. 3d DCA 1984), the court held:
[W]e note that the fact that the mother never had actual custody of her child does not foreclose a finding of neglect. See In re J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982). We do not hold that long-term incarceration for conviction of a crime in and of itself works an automatic forfeiture of parental rights. An imprisoned parent, however, is not relieved of all parental responsibilities because of imprisonment.
The trial court in the instant case heard the testimony and was in the best position to judge the credibility of the witnesses, including that of the appellant as to his concern for the child and his reasons for failing to deal with the performance agreements. I doubt that anyone reading the cold record can have as true a perspective as the trial court in a case such as this. Time is running out for this five-and-a-half-year-old child, to begin anything approaching a normal life. Appellee has located a family that wants to adopt the child with *655 his half-brother. To allow the biological father “another chance” may well be to deny this child any chance. The experienced trial court was aware of all these facts and evaluated the circumstances in accord with the statute and the best interest of the child. This child should not be put at further risk.

. The statutes within Chapter 39, Florida Statutes, relating to termination of paternal rights were extensively revised effective October 1, 1987, Chapter 87-289, Laws of Florida (1987), but in the proceedings below, held in December of 1987, and on appeal here, no issue is made of the amendments and revisions. See §§ 39.46 through 39.516, Fla.Stat. (1987).

. These agreements required, inter alia, that appellant obtain a drug and alcohol evaluation and attend classes on parenting and child behavior.

. § 39.41(l)(f)3.b„ Fla.Stat. (1985); § 39.467(2)(d)2.(e), Fla.Stat. (1987).