NORTHCUTT, Judge,
Concurring.
I wholeheartedly agree with Judge Al-tenbernd’s opinion, but I write separately to emphasize that J.R.S.’s determination to place his child with his relatives is, itself, a parenting decision that I believe'is entitled to much deference under the federal and Florida constitutions. Our society recognizes that parents have fundamental rights to the care, custody and management of their children. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957). See also Richardson v. Richardson, 766 So.2d 1036 (Fla.2000). Many parents who are unable to tend their children elect to place them with relatives or friends to ensure that the children receive proper care. Surely, such decisions are within the ambit of fundamental parenting rights, and the state has no authority to interfere with them in the absence of the exceptional circumstances specified in Chapter 39, Florida Statutes.[9]
Viewed in this light, J.R.S.’s desire to send Z.J.S. to relatives has two significant ramifications. First, it is important to note that if J.R.S. had been able to tend his child, his resumption of parenting responsibilities beginning in 1998 might well have precluded a finding of abandonment notwithstanding his earlier lapses. See § 39.01(1), Fla. Stat. (1999); In the Interest of M.R.L., 608 So.2d 548 (Fla. 4th DCA 1992). See also M.S. v. D.C., 763 So.2d 1051 (Fla. 4th DCA 1999) (noting that incarceration which prevents parent from *880 caring for child, alone, is insufficient to support termination of parental rights); In the Interest of B.W., 498 So.2d 946 (Fla.1986) (holding termination of parental rights improper when abandonment was involuntary). Cf. F.C. v. State, Dep’t of Children and Families, 2001 WL 28553 (Fla. 2d DCA 2001) (noting that while father’s infrequent visitation in 1997 and 1998 could imply a rejection of his parental obligations, his resumption of visitation in 1999 cast doubt on that implication); Carlson v. State, Dep’t of Health and Rehabilitative Services, 378 So.2d 868 (Fla. 2d DCA 1979) (reversing for new hearing when evidence to support termination reflected conditions in mother’s earlier marriage, not the present situation in her new marriage). In my estimation, J.R.S.’s decision to entrust his child to capable and loving relatives and to facilitate their bond by arranging visitation among them evinced no less concern for Z.J.S.’s welfare than if J.R.S. had been able to resume caring for the child himself. As such, J.R.S.’s efforts in this regard must weigh against terminating his parental rights.
Second, as mentioned, I believe the constitution mandates respect for a parent’s private placement decision just as it does for the myriad other choices a parent must make in the raising of a child. In other words, the state may not veto a parent’s determination to place his child with another caregiver simply because a different placement might be better. Even in the context of a dependency proceeding, a parent in J.R.S.’s position who seeks the return of his child is not required to prove that he can furnish better care than the Department or a foster parent can provide. Rather, the parent must demonstrate only that he has substantially complied with his case plan “to the extent that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by the return of the child to the home.” § 39.508(9)(a)8.b., Fla. Stat. (1999); see also §§ 39.508(14), Fla. Stat. (1999) (providing that upon expiration of the case plan, or sooner if the parents have substantially complied with it, the court shall issue an order to show cause why it should not return the child to the parents); 39.810 (in a termination proceeding, consideration of manifest best interest of the child “shall not include a comparison between the attributes of the parents and those of any persons providing a present or potential placement for the child.”).
For these reasons, if on remand the court concludes that the circumstances do not justify terminating J.R.S.’s parental rights, his desire to have his child placed with his relatives should be assessed according to similar criteria, and it should be accorded great weight. This is especially so, considering that the child’s dependency did not result from any abusive behavior or emotional incapacity on J.R.S.’s part. Indeed, at the termination hearing the Department emphasized that J.R.S. was unable to care for his child because of physical limitations, an assessment with which J.R.S. concurred. Therefore, he endeavored to provide for Z.J.S.’s welfare in the one way he could, by placing the child with relatives who have the wherewithal to meet all of Z.J.S.’s needs. This arrangement promised the child a safe environment and a connection to his family history. And, significantly, it was consistent with statutory provisions emphasizing that relatives merit special consideration in placement decisions. See §§ 39.001(l)(g), (i), (j); ,401(2)(a)(3), (3); .402(l)(c); .5085.
Just as important, J.R.S.’s effort to place his child with members of his own family was consistent with the principle that even when state involvement in parent-child relationships is justified, its intervention must be the “least restrictive”, see § 39.302(2)(a), Fla. Stat. (1999), and it *881 should be tempered by respect for the parent’s constitutional rights and, where appropriate, by a willingness to encourage parental participation in placement decisions. In light of these principles, on remand the trial court should carefully consider whether J.R.S.’s physical limitations truly justify eradicating any relationship between him and his child, and denying him any input into the child’s future.

. In fact, when Z.J.S. was first born, the Department hesitated to intervene when the parents were endeavoring to place the child with some friends and appoint them as the child’s guardians.