476 So.2d 1275 (1985)
Mary K. BURK, Petitioner,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Respondent.
No. 65790.
Supreme Court of Florida.
August 30, 1985.
Rehearing Denied November 12, 1985.
*1276 Charles J. Roberts of Holcomb, Ennis, Theriac, Brinson, Amari and Roberts, Cocoa, for petitioner.
Jim Smith, Atty. Gen. and James A. Peters, Asst. Atty. Gen., Tallahassee, Douglas E. Whitney, Dist. Counsel, Orlando, for Dept., of Health and Rehabilitative Services; and Joan H. Bickerstaff of the Law Offices of Joan H. Bickerstaff, Melbourne, court-appointed attorney ad litem for the child, C.B., respondent.
Jeffrey H. Barker, C. James Dulfer, Henry George White, Mary K. Williams, and Christina A. Zawisza, Tallahassee, for Florida Legal Services, Inc., amicus curiae.
McDONALD, Justice.
We have for review In re C.B., 453 So.2d 220 (Fla. 5th DCA 1984), which certified the following question of great public importance:
WHETHER EITHER A PERFORMANCE AGREEMENT OR A PERFORMANCE *1277 PLAN AS PRESCRIBED BY SECTION 409.168 [FLORIDA STATUTES (1983)] IS A PREREQUISITE TO PERMANENT COMMITMENT PROCEEDINGS PURSUANT TO SECTION 39.41(1)(f)1.a. [FLORIDA STATUTES (1983)].
Id. at 222. We have jurisdiction, article V, section 3(b)(4) of the Florida Constitution and answer the certified question in the affirmative.
The police responded to a child abuse complaint on April 27, 1982 and found a five-year-old girl at a neighbor's house. She had many bruises on her body, which she said resulted from being hit with a board by her mother, Mary Burk, and her mother's boyfriend, Alvin Long, Jr. The child also told investigators about other instances of physical and emotional abuse. Burk left the scene during the investigation and the girl was taken into custody.
The Department of Health and Rehabilitative Services (HRS) petitioned the trial court to declare the girl a dependent child because she had been abandoned, abused, or neglected by Burk and Long. The trial court adjudicated her dependent and awarded temporary care, custody, and control of her to HRS. Burk expressed her desire to cooperate with HRS for her daughter's return, but HRS never offered her a performance agreement under section 409.168. Instead, HRS filed a petition for permanent commitment of the child for adoption. After a hearing, the trial court found that the girl had been severely abused while in her mother's care and that Burk had neglected and failed to protect her child. The trial court permanently deprived Burk of her parental rights to her daughter and granted the HRS petition for permanent commitment.
On appeal the district court affirmed the order of commitment, rejecting Burk's argument that HRS must offer her a performance agreement before terminating her parental rights through a permanent commitment proceeding. The district court held that a performance agreement under section 409.168 need not be entered into by HRS where permanent commitment is sought under subsection 39.41(1)(f)1.a because of parental abandonment, abuse, or neglect. Because of the serious nature of the loss of parental rights, the district court certified its question to us. We agree with Burk that section 409.168 requires HRS to at least offer her a performance agreement before terminating her parental rights.
The legislature enacted section 409.168 to deal with the problem of children left in long-term foster care. The legislature expressed its intent to speed the permanent placement of dependent children with their natural or adoptive families. § 409.168(1). Under the statutory scheme the social service agency responsible for a child in foster care, in conference with the natural parents, prepares a performance agreement for signature by the relevant parties. § 409.168(2)(g). The performance agreement sets out the actions which the parties must take to produce either the safe return of the child to the parents or the permanent commitment of the child for adoption, if return is untenable. § 409.168(3)(a). Subsection 409.168(3)(a) requires the preparation of a performance agreement. "In each case in which the custody of a child has been vested either voluntarily or involuntarily in the social service agency and the child has been placed in foster care, a performance agreement shall be prepared within 30 days after the placement and shall be submitted to the court." Id. (emphasis added). HRS, as the social service agency responsible for this child, violated its statutory duty when it refused to offer a performance agreement to Burk. Therefore, the trial court erred in terminating Burk's parental rights and permanently committing the girl for adoption. Accord, In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA 1983) (trial court erred in terminating parental rights on ground of abandonment without first offering a performance agreement to the child's natural mother).
We also find that our interpretation of section 409.168 is supported by the *1278 strength of a natural parent's child custody rights. In a child custody dispute between a natural parent and a third party, a strong public policy exists in favor of the natural family unit. In re Guardianship of D.A. McW., 460 So.2d 368 (Fla. 1984). The time-honored legal rights of a parent to the custody of his or her child may only be taken away where the ultimate welfare or best interest of the child requires the termination of parental rights. In re Interest of Camm, 294 So.2d 318 (Fla.), cert. denied, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974). By requiring HRS to offer a performance agreement to a natural parent before terminating parental rights, section 409.168 complies with public policy and protects the rights of the parent as well as the rights of the child and society.
HRS and the guardian ad litem argue that a performance agreement need not be prepared before a child is permanently committed for adoption where the trial court finds permanent commitment in the best interests of the child and "the court finds that the parent has abandoned, abused, or neglected the child." § 39.41(1)(f)1.a. They also argue that a performance agreement need not be offered in this case because the child was in emergency shelter care rather than foster care. We reject both arguments.
Subsection 39.41(1)(f)1.a makes no mention of performance agreements in permanent commitment cases involving abandonment, abuse, or neglect. The construction urged by HRS and the guardian ad litem would narrow the performance agreement requirement in section 409.168 to cover only those cases without allegations of parental abandonment, abuse, or neglect of the child. The legislature chose to require the preparation of performance agreements in section 409.168 without the broad exception suggested here, and we will not create such an exception in this case. By enacting the mandatory language of section 409.168, the legislature did not grant HRS the discretion to pick and choose which parents deserve a performance agreement. All parents must be offered one. Whether a parent will comply with the agreement has no bearing on HRS's statutory duty to prepare it.
Similarly, we cannot accept the argument that a performance agreement was not required in this case because the child was in emergency shelter rather than foster care, as defined in section 409.168. Subsection 409.168(2)(d) defines foster care as "care provided a child in a foster family or boarding home, group home, agency boarding home, child care institution, or any combination thereof." We find this definition broad enough to encompass emergency shelter facilities. Also, a dependent child may not be held in a shelter more than fourteen days without an adjudication order by the trial court. § 39.402(7), Fla. Stat. (1983). The child in this case has been in the custody of HRS for over two years. She cannot have been in an emergency shelter all that time. She is in foster care, and HRS must comply with section 409.168.
Our decision in this case does not mandate the return of any child to an abusive home. We only require that HRS follow the statutes and offer a performance agreement to a parent before terminating parental rights. While it is true that the trial court must return the child to the natural parents if the parents substantially comply with performance agreement, the failure to comply substantially with a performance agreement may result in permanent commitment of the child. § 39.41(1)(f)1.d, (6)(b). The performance agreement process gives problem parents a chance to improve their parenting and interpersonal skills so that the family may be reunited in the future. HRS gets the opportunity to evaluate the home situation and determine whether the child may safely be returned to the home or, instead, should be permanently placed for adoption if the home environment has not changed for the better. The trial court has the final determination on whether the child will be returned to the natural parents and retains jurisdiction for six months after any return. § 39.41(6)(b).
*1279 Accordingly, we hold that a performance agreement must be prepared whenever a social service agency obtains custody of a dependent child, just as section 409.168 requires. We answer the certified question in the affirmative, quash the district court decision under review, and remand for further consistent proceedings.
It is so ordered.
ADKINS, OVERTON and SHAW, JJ., concur.
ALDERMAN, J., dissents with an opinion, in which BOYD, C.J., and EHRLICH, J., concur.
ALDERMAN, Justice, dissenting.
I agree with the Fifth District that to interpret section 409.168 to require HRS to arrange for a performance agreement under the facts of the present case would lead to absurd results. This Court has often reiterated the fundamental rule of statutory construction that a construction of a statute which would lead to an absurd result should be avoided. But here, when confronted with a reasonable interpretation and an interpretation which leads to absurd consequences, the Court chooses the latter. Under this Court's interpretation, notwithstanding a clear case of child abuse or abandonment, the consequence of which would be inevitable permanent commitment, the Department of Health and Rehabilitative Services has no choice but to enter into a performance agreement.
I would approve the decision of the district court.
BOYD, C.J., and EHRLICH, J., concur.