THOMPSON, Judge.
Appellant, the natural father of D.W.K., appeals an order permanently committing the child to the Department of Health and Rehabilitative Services (HRS) for subsequent adoption. Appellant raises four issues on appeal, only one of which merits discussion. Appellant argues that the trial court committed reversible error by not requiring a performance agreement between HRS and the parents. We disagree, and affirm the order of permanent commitment.
D.W.K. was adjudicated dependent and was placed in “the temporary care, custody and control” of his maternal grandmother. Although the disposition order contains no specific reference to any particular statute, it is apparent that D.W.K. was placed with his grandmother pursuant to § 39.41(1)(b), Fla.Stat. (1983), which empowers the court to place an adjudicated dependent child “in the temporary legal custody of an adult relative willing to care for the child.” D.W.K., therefore, was never committed to the legal custody of HRS or placed in foster care within the purview of § 409.168, Fla.Stat. Thus the failure of HRS to offer, or of the court to order, a performance agreement was not reversible error.
In Burk v. Department of Health and Rehabilitative Services, 476 So.2d 1275 (Fla.1985), the court, reviewing In re C.B., 453 So.2d 220 (Fla. 5th DCA 1984), found that § 39.41(1)(f)1.a., Fla.Stat. (1983) had been incorrectly interpreted by the district court as abrogating the necessity for a performance agreement under § 409.168 when permanent commitment was sought on the basis of abandonment, abuse or neglect. In response to the district court’s certified question the Supreme Court in Burk held that a performance agreement must be offered whenever a social service agency obtains custody of a dependent child. The court also found that the § 409.168(2)d definition of “foster care” encompassed the emergency shelter care in which the child, C.B., had been placed. “Foster” means receiving, sharing or affording parental care although not related through legal or blood ties. The American Heritage Dictionary 519 (1979). Care by the maternal grandmother is not foster care by any definition, statutory or otherwise. Burk and the other cases discussing the necessity of a performance agreement all involved children who clearly came within the purview of the language of § 409.-168 requiring a performance agreement for children in the custody of HRS or in foster care. See, e.g. Yelverton v. State of Florida, Department of Health and Rehabilitative Services, 475 So.2d 1038 (Fla. 5th DCA 1985); In the Interest of T.W.S., 466 So.2d 387 (Fla. 1st DCA 1985).
In the instant case D.W.K. was neither in foster care nor in the custody of HRS and was never subject to the requirements of § 409.168. Despite the absence of a Chapter 409 performance agreement there was “a definite plan or effort to reunite the child with its parent(s).” In the Interest of K.H., 444 So.2d 547, 549 (Fla. 1st DCA 1984). The court in the instant case entered a series of orders repeatedly directing appellant to undergo a psychological evaluation, evaluations for drug and alcohol abuse, to pursue counseling as recommended, and to pay $20.00 per week child support. Appellant received extensive and continuing urging from the judge, HRS personnel, and family members to comply with the rather minimal require- *1362 merits of the orders so that visitation could be established with D.W.K. Over the course of almost two years, appellant made only negligible attempts to comply with the orders and initiated virtually no contact with his child by way of cards, letters, phone calls or inquiry. He candidly admitted to an HRS counselor that he did not want actual custody of D.W.K., but was pursuing it only because he had been denied visitation. The record presents overwhelming evidence that appellant was fully aware of what was required of him before he could be reunited with his child, but simply did not comply with those requirements. Abandonment within the meaning of § 39.01(1), Fla.Stat. was conclusively demonstrated. There is also overwhelming evidence in the record of the necessity for an immediate resolution of this case in order to provide a stable emotional and family environment for this young minor child. The record reveals that the child is making good progress in overcoming his emotional problems which were created before his grandparents were given custody. Further unnecessary proceedings could result in needless emotional harm.
The absence of a performance agreement does not constitute reversible error where, as here, it is not required by either Chapter 39 or Chapter 409. The order of permanent commitment is affirmed.
BOOTH, J., concurs.
ERVIN, J., dissents with opinion.