498 So.2d 604 (1986)
In the Interest of J.J.C., a/k/a J.J.W., a Child.
No. 85-2389.
District Court of Appeal of Florida, Second District.
December 3, 1986.
*605 Jordan L. Wallach, Sarasota, for appellant.
James R. DeFurio of Steves, Busch & Cole, Sarasota, for appellee.
DANAHY, Chief Judge.
The mother of J.J.C. attacks, and the Department of Health and Rehabilitative Services (HRS) defends, an order of the trial judge permanently committing J.J.C. to HRS for subsequent adoption and terminating the mother's parental rights. The order recites the findings of the trial judge that the mother is a chronic schizophrenic and that her condition is basically untreatable and renders her incapable of effectively raising a child. The trial judge concluded that this inability to raise a child constitutes prospective neglect and that it was manifestly in the best interests of J.J.C. that he be committed to HRS for subsequent adoption. The record contains clear and convincing evidence to support the findings and conclusions of the trial judge and that ordinarily would sustain an order of permanent commitment. See In the Interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982).
However, HRS failed to offer the mother a performance agreement or permanent placement plan as required by section 409.168(3) and (4), Florida Statutes (1985), prior to the institution of these permanent commitment proceedings. Our supreme court has held that it is error to enter an order of permanent commitment when HRS has failed to perform its statutory duty to offer a performance agreement or plan prior to the institution of the permanent commitment proceedings. Burk v. Department of Health & Rehabilitative Services, 476 So.2d 1275 (Fla. 1985). The supreme court has further held that even though the safe return of the child to his or her parents is untenable, a performance agreement or plan must be offered to the parents, even if not with a view toward returning custody to them. Gerry v. Department of Health & Rehabilitative Services, 476 So.2d 1279 (Fla. 1985).
The holdings in Burk and Gerry are binding upon us and require us to reverse the order of permanent commitment entered in this case. Nothing we have said will require HRS to return the child to the custody of the mother pending further proceedings.
We reverse and remand for further proceedings.
GRIMES, J., concurs.
HALL, J., concurs specially with opinion.
HALL, Judge, concurring specially.
I cannot disagree with the majority that section 409.168(3) and (4), Florida Statutes (1985), and the supreme court decisions in Burk and Gerry require HRS to offer the mother a written performance agreement or to prepare a permanent placement plan. The record certainly discloses that HRS did not in fact offer the mother a performance agreement or submit a permanent placement plan to the trial court. But, requiring HRS to arrange for a performance agreement *606 under the facts of this case will lead to absurd results.
Though the record contains an order directing the preparation of a performance agreement, HRS failed to prepare the agreement; instead, HRS proceeded to provide such services as it determined were necessary for a return of the child to the mother. HRS set up a schedule of visitation between the child and the mother, directed that the mother attend parenting classes, and provided individual counseling for the mother. The court ordered a psychological examination followed by such treatment was determined necessary. The mother was diagnosed as a chronic, undifferentiated schizophrenic, often delusional. Testing performed by several doctors revealed a serious psychopathology and showed that she has great difficulty in perceiving reality or in keeping her mind on any topic for any great period of time, that she has serious difficulty in concentrating and following through with even the simplest chores, and that she spends a significant portion of her life in some sort of delusional state. Medication was prescribed for the mother to take on a longterm basis, and it was recommended that she receive psychological counseling. HRS referred the mother to Suncoast Mental Health Center for counseling on July 24, 1984. The record reflects that she had been an irregular patient at Suncoast since 1981. She was treated by Suncoast from July 24, 1984, to January of 1985, at which time she failed to return to Suncoast for any further treatment. During the period of time that she was under treatment at Suncoast, she frequently refused to take her medication. The psychotherapist testified that, because the mother's thinking was so scattered, she was not able to undergo psychotherapy. Consequently, in her relationship with the mother, the psychotherapist was only able to play a supportive role in which she attempted to make sure the mother was taking her medication and was "all right." She testified that the mother's doctor wrote to her informing her that he would no longer see the mother unless it was recommended by the therapist because the visits had been a waste of time in that the mother would just come in and refuse to take her medication.
At the permanent commitment hearing, the administrator of the children, youth, and family program of HRS testified that all of the resources available to HRS were utilized in an attempt to reunite the mother with her minor child and that none of these services was successful.
The record reflects that HRS had worked with this mother from March 26, 1984, until April of 1985 in an attempt to reunite the mother and the child, without the slightest amount of success.
It was apparent to the trial court that any efforts by HRS to reunite the child with the mother would be met with dismal failure. Even as late as the weekend prior to the final hearing, the mother advised a police officer that as soon as the hearing was over she and her son would move to Green Bay, Wisconsin, because there was a mountain there with a magnetic field that would calm her mind.
The supreme court in Burk v. Department of Health & Rehabilitative Services, 476 So.2d 1275 (Fla. 1985), held that the purpose of "[t]he performance agreement process [is to give] problem parents a chance to improve their parenting and interpersonal skills so that the family may be reunited in the future. HRS gets the opportunity to evaluate the home situation and determine whether the child may safely be returned to the home or, instead, should be permanently placed for adoption if the home environment has not changed for the better." Id. at 1278.
Therefore, to require HRS to offer the mother a performance agreement, as required by section 409.168(3), would create the absurd result of requiring HRS to duplicate its efforts to aid an individual who is clearly incapable of successfully responding to those efforts.
The trial judge found that the mother's condition is chronic and untreatable and renders her incapable of effectively raising a child and that the evidence was overwhelming *607 that this inability to raise a child constitutes prospective neglect.
Though we must reverse the permanent commitment order in this case, I am in no way declaring that HRS must return custody of the child to the mother and offer her a performance agreement. Section 409.168(4), Florida Statutes, provides that in the event the natural parents cannot participate in the preparation of a performance agreement because of the emotional or mental condition of the parent, HRS shall prepare and submit to the court a permanent placement plan. Because of the facts of this case, I would reverse and remand with directions to HRS to proceed with a permanent placement plan according to the provisions of section 409.168(4) and terminate all visitation with the mother pending a final hearing on a permanent commitment of the child.