501 So.2d 706 (1987)
Kathy WARREN, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 86-1105.
District Court of Appeal of Florida, Second District.
January 28, 1987.
*707 Robert C. Hill, Fort Myers, for appellant.
Eugenie G. Rehak, Staff Atty. for State of Florida, Dept. of Health and Rehabilitative Services, Fort Myers, for appellee.
CAMPBELL, Acting Chief Judge.
This appeal is from the final judgment of the trial court that permanently committed the child, B.W.N., to the custody of the Department of Health and Rehabilitative Services ("HRS"). The natural mother appeals. The sole issue presented for our determination involves an interpretation of Burk v. Department of Health and Rehabilitative Services, 476 So.2d 1275 (Fla. 1985) and Gerry v. Department of Health and Rehabilitative Services, 476 So.2d 1279 (Fla. 1985). Appellant argues that prior to termination of parental rights and permanent commitment to HRS for adoption, HRS must offer a parent a performance agreement that has as its goal a safe return of the child to the parents. We disagree and affirm.
The facts in this case show that B.W.N. was born on February 10, 1980. HRS filed an amended petition of dependency concerning the child and a half-sister on July 1, 1983. Appellant refused to produce the child for the dependency hearing and the trial court ordered the child taken into custody. HRS filed a second amended petition of dependency alleging past and current conditions of neglect and abandonment. Appellant, represented by counsel, pled nolo contendere to the allegations of that petition. The court adjudicated the child to be dependent and set a disposition hearing date.
On that hearing date, the court found that HRS had made reasonable efforts to allow the child to remain in the parent's home, but that the child's best interests would not be served if the court allowed him to remain there because appellant had consistently rejected social and other support services. Appellant's pattern of abandonment and neglect had led to the permanent commitment of two other of her minor children. She had previously given B.W.N. to her mother and father to replace a child of theirs of the same name who was permanently committed due to abuse and neglect in 1979. Up until the time she was presented with the performance agreement seeking permanent commitment for adoption, appellant had stated she wished the return of B.W.N. not for herself, but to give custody to her parents.
The trial court had initially directed HRS to file a permanent placement plan pursuant to section 409.168(4), Florida Statutes (1985). However, upon the issuance by the supreme court of its opinions in Gerry and Burk, the court required HRS to submit a performance agreement to appellant pursuant to section 409.168(3). The performance agreement submitted by HRS to appellant *708 had as its stated purpose permanent commitment for purpose of adoption and not the return of B.W.N. to appellant. Appellant refused to sign the agreement. HRS then submitted its permanent placement plan pursuant to section 409.168(4) which was approved at the final hearing following which the trial court terminated appellant's parental rights and ordered the child permanently committed. Appellant appeals those determinations.
At the final hearing, clear and convincing evidence was produced to establish that the natural mother did not effectively parent her children and did not exhibit the capacity or desire to do so. Evidence was produced that placement with the natural mother or continued placement with the child's grandmother would result in emotional and mental neglect and injury to the child. The court found that since appellant did not want to be the child's custodian, she would continue to neglect the child.
Psychological evaluations performed on the natural mother, child and grandmother revealed that placement of the child with the natural mother, or continued placement with the grandmother, was not in the child's best interest. The grandfather was not evaluated as he was incarcerated in state prison at the time.
The natural mother is mildly mentally retarded with a full scale I.Q. of 64. The psychologist reported that she had a limited ability to provide effective management of her children's behavior, to meet their basic safety and physical needs, and to provide for their need for mastery, stimulation, self-esteem, belongingness and security and, therefore, could not provide them with a stable, long-term environment. The grandmother, the psychological parent of the minor child, is also mildly mentally retarded with a full scale I.Q. of 58. The psychologist reported that when the minor child entered foster care in July of 1985, he had poor language skills, poor memory and understanding, minimal school readiness skills and was measured at 72 verbal I.Q. and 85 performance I.Q. The psychologist concluded that the minor child was at risk for future educational failure and would function in the retarded range of development if placed back with the grandmother or mother. The trial judge determined that the child could not be safely reunited with the natural mother.
We conclude that once HRS has submitted substantial evidence to the court that the child cannot be safely reunited with its natural parents, as here, and the court makes such a finding, it is then proper for HRS to utilize the alternative provided in section 409.168(3)(a) and submit to the parent a performance agreement that has as its purpose the permanent commitment of the child to HRS for adoption. In such cases, HRS need not submit a performance agreement to the parent that has as its goal the return of the child to the parent. We conclude then that under Gerry, a court may determine that a child's safe return to its parents is untenable for reasons other than severe physical abuse.
In Gerry, the court concluded that "[a] performance agreement must be offered to Gerry, even if not with a view toward returning custody to her." (Emphasis supplied.) That is the type of performance agreement offered to appellant here and rejected by her. We conclude that the above-quoted explicit language of Gerry and the equally clear alternatives expressed in section 409.168(3)(a), clearly override any interpretation or construction of Burk that would require that in every instance, regardless of clear parental misconduct that renders the return of the child to a parent unsafe, a performance agreement must be offered that contemplates return of the child to the parent. The statute specifies that a performance agreement must "assure the safe return of the child to his parents, or if this is not possible, the permanent commitment of the child... ." (Emphasis supplied.)
Affirmed.
SCHOONOVER and LEHAN, JJ., concur.