THREADGILL, Judge.
The natural mother of R.D.D., Jr., appeals a final judgment entered April 24, 1986 permanently committing her nine year-old male child to the Department of Health and Rehabilitative Services (HRS) for adoption. The child has been in foster care since March 4, 1983. She alleges the trial court erred in (1) failing to require HRS to provide a performance agreement pursuant to section 409.168(3), Florida Statutes (1985) prior to the permanent commitment proceedings and (2) in entering final judgment of permanent commitment where there was no clear and convincing evidence of abandonment. We affirm the final judgment of permanent commitment because we find compliance with the statute and clear and convincing evidence of abandonment.
The record reflects that on March 4, 1983, the minor child, then four years old, was left on the front porch of the home of his father’s relatives by an unknown white male. HRS was called and took custody of the child, who was then adjudicated dependent on March 24, 1983. The mother *413 was not present at the adjudicatory hearing because she could not be located. The natural father was present and stipulated to the adjudication of dependency. A permanent placement plan pursuant to chapter 409.168(4), Florida Statutes (1985) was filed May 22, 1984 alleging that it was being filed in lieu of a performance agreement because the parents could not participate in the preparation of a performance agreement.
On March 21, 1985 HRS filed a petition for permanent commitment alleging that the mother had abandoned and neglected the child. The trial court heard extensive testimony from numerous child care professionals and relatives of the child. Four hearings were conducted between June 10, 1985 and January 20,1986. After the final hearing, the court entered a judgment of permanent commitment finding that the parents had abandoned the child, that the mother had neglected the child, and that permanent commitment to HRS for adoption was in the best interest of the child.
Appellant alleges that the court erred by denying her an opportunity to comply with a performance agreement before ordering permanent commitment. Section 409.-168(8)(d)(l) states:
In each case in which the custody of a child has been vested, either voluntarily or involuntarily, in the social service agency and the child has been placed in foster care, a performance agreement shall be prepared within 30 days after the placement and shall be submitted to the court. If the preparation of a performance agreement, in conference with the natural parents and other pertinent parties, cannot be accomplished within 30 days, for good cause shown, the court may grant an extension not to exceed 30 days.
Appellant argues that in violation of the statute HRS failed to notify her of the filing of the permanent placement plan and failed to offer her a performance agreement after she learned of her child’s placement. She also argues that HRS made no effort to award custody of the child to her willing close relatives. We reject these arguments.
No performance agreement was prepared or submitted to the court. Appellant was offered a chance to negotiate a performance agreement shortly after temporary custody of her son was granted to HRS. When HRS put the child in shelter in August, 1983, the case was initially assigned to Theresa Baker. She testified that all efforts to locate the mother and maternal grandmother failed. Ms. Baker was able to obtain an Illinois address for the maternal grandmother, and wrote her there, advising that the child was in custody and giving the phone number of the agency.
On August 9,1983 HRS worker Sally Caro received a phone call from the appellant. The appellant was advised that the child was in custody and that she would need to come in and negotiate a performance agreement before visitation would be allowed. This testimony is in direct conflict with the mother’s assertion that she found out about the child’s dependency from the television news segment “Wednesday’s Child” in June 1984. We find the evidence sufficient to support a conclusion by the court that the mother knew HRS had the child as early as August 1983 and that she failed to negotiate a performance agreement as required by statute.
There is also disputed testimony concerning HRS inquiries about placement of the child with relatives of the mother. We find sufficient evidence in the record that HRS made proper inquiries, but determined such placement was inappropriate under the circumstances.
After the appellant was asked to negotiate a performance agreement, and failed to do so, HRS filed a permanent placement plan pursuant to section 409.168(4)(a), Florida Statutes (1985) which states:
In the event the natural parents will not or cannot participate in preparation of a performance agreement, the social service agency shall submit a full explanation of the circumstances and a plan for the permanent placement of the child to the court....
*414 The circumstances were fully set out in the placement plan and fully explained in four days of testimony. The filing of the permanent placement plan by HRS satisfied the requirements of the statute.
In Burk v. Department of Health and Rehabilitative Services, 476 So.2d 1275, 1276-1277 (Fla.1985), the supreme court affirmatively answered the certified question:
WHETHER EITHER A PERFORMANCE AGREEMENT OR A PERFORMANCE PLAN AS PRESCRIBED BY SECTION 409.168, [FLORIDA STATUTES (1983) ] IS A PREREQUISITE TO PERMANENT COMMITMENT PROCEEDINGS PURSUANT TO SECTION 39.41(l)(f)l.a. [FLORIDA STATUTES (1983)].
In effect, Burk states that the parents must be offered a performance agreement before termination of parental rights. Burk says no more than the statute itself and the filing of the permanent placement plan also satisfies the requirement of Burk. Apellant’s argument that she was not notified of the filing of the permanent placement plan contrary to statute is without merit. She could not be located according to the witnesses who repeatedly attempted to contact her, and she failed to respond after her telephone conversations with HRS. Furthermore, when she was finally located in jail in March, 1985, a year and seven months had passed without her having had any contact whatsoever with the child. She was notified of the plan while in jail and given an opportunity to explain her absence to the trial judge. Because appellant would not participate in a performance agreement, the filing of a permanent placement plan was in order.
We have carefully considered and reviewed the entire record in this case including the briefs and the record of the four days of trial. Our review indicates that the evidence presented below affirmatively establishes that both HRS and the trial court complied with section 409.168 Florida Statutes (1985) throughout this dependency proceeding.
Appellant argues that there was no clear and convincing evidence of abandonment.[1] A finding of abandonment can be made only if supported by clear and convincing evidence. Carlson v. State, Department of Health and Rehabilitative Services, 378 So.2d 868 (Fla. 2d DCA 1979). In Carlson, this court stated that the right and integrity of the family is the most fundamental of rights and should not be disturbed unless it is properly shown that the child was abandoned.
The record does not support appellant’s argument that there was no clear and convincing evidence of abandonment. She states that she did not contact HRS only because she believed the child was in the father’s custody from March 1983 to March 1985. The father testified, however, that after living with him for about a month in March, 1983, the mother left Jacksonville with the child and his pickup truck. His version is supported by testimony that a stranger called his relatives’ home just before leaving the child on their porch and said that the mother was going to jail.
The record indicates that HRS received telephone calls from Appellant in August, 1983 and June, 1984 and made numerous efforts to contact her until she was finally located in jail in March of 1985. During that time Appellant made no effort to communicate with her son, nor send him money, cards or gifts. The finding of abandonment is clearly supported by substantial competent evidence. The trial court is presumed to have correctly applied the requirements for permanent commitment under section 39.41(l)(f), Florida Statutes (1985), including the proper burden of proof. Delgado v. Strong, 360 So.2d 73 (Fla.1978).
*415 Appellee also points out that the judgment of permanent commitment includes a finding of neglect. Although appellant does not argue neglect in her brief and did so only summarily before the court, we will address the matter in order to provide a complete analysis of this situation. Section 39.01(27), Florida Statutes (1985) defines neglect as follows:
“Neglect” occurs when the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person primarily responsible for the child’s welfare deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless services for relief have been offered and rejected....
The testimony shows that this family was known to HRS as early as 1980. There was testimony that the maternal grandmother was primarily responsible for the child, and often kept the child while the mother would just come and go. There were also indications that the grandmother had not followed-up on special programs for the child and would not follow instructions about the child’s medication.
Testimony indicated that when HRS received the child in August of 1983, he had severe behavioral problems. Although the child was then four years old he had no language skills, was not toilet trained, was completely uncontrollable and acted like a wild animal. One psychologist testified that he was severely emotionally disturbed. He was also diagnosed as having autistic syndrome, a condition which is treatable but probably not curable. A child psychologist who testified for the mother agreed that the child had not developed, although he thought the child was not necessarily mentally retarded. Considering the special needs of this child, we agree with the trial court’s conclusion that the home environment put the child in danger of significant impairment amounting to neglect under the statute.
The experts and the case workers all recommended twenty-four hour supervision for the child for many years. They also were in agreement that removal from the current program would be detrimental and that returning the child to the appellant would be a definite gamble. The child needs maximum parenting skills and the mother has, at best, only average skills. The experts agree that it could take years just to determine if the mother can handle the child and if she cannot, the child may be lost forever.
Evidence indicates that since the child has been in the HRS program with foster parents, his progress has been outstanding. He has been taught simple things like how to go to sleep, how to identify simple objects, and can even use a microwave oven. He is in a special school and progressing slowly but surely. He still has periods of regression but efforts to restore him have thus far been successful.
The court’s findings of abandonment and neglect are supported by clear and convincing evidence. We also agree that permanent commitment is in the best interest of the child as shown by the evidence. Although there was some evidence to the contrary, it is not the function of this court to reweigh the evidence and substitute our judgment for that of the trial court. A trial court’s findings of fact should not be disturbed unless there is a total lack of substantial evidence in support. Greenwood v. Oates, 251 So.2d 665 (Fla.1971); Hamilton v. Title Insurance Agency of Tampa, Inc., 338 So.2d 569 (Fla. 2d DCA 1976); Prevatt v. Prevatt, 462 So.2d 604 (Fla. 2d DCA 1985).
The judgment of permanent commitment is therefore affirmed.
Affirmed.
LEHAN, Acting C.J., and FRANK, J., concur.

. "Abandonment" means a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person responsible for the child's welfare, while being able, makes no provision for the child’s support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations.
If the efforts of such parent or legal custodian, or parent primarily responsible for the child’s welfare to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.... § 39.01(1), Fla.Stat. (1985) (emphasis added)