PER CURIAM.
In this proceeding to terminate parental rights, Judith and Richard Riha seek review of an order titled “Performance Plan” (the plan). The plan orders the eventual reunification of two children with Jeffrey Crouch, their natural father. We grant certiorari relief and quash the order.
The Rihas are the maternal aunt and uncle of Jeffrey Crouch’s two daughters, ages eleven and eight. The girls have been living with the Rihas in Massachusetts since Jeffrey Crouch’s arrest in January 1987 for the murder of his wife, the girls’ mother. In mid-1988, the charges against Jeffrey Crouch were dismissed after his confession was suppressed. The parties do not dispute that both daughters, particularly the older one, believe their father murdered their mother.
In 1987, the Florida probate court appointed the Rihas as guardians of the children. In accordance with our prior opinion, the Rihas sought a determination of dependency and termination of parental rights. See In re the Guardianship of J.L.C., 567 So.2d 21 (Fla. 2d DCA 1990). Although the Department of Health and Rehabilitative Services (HRS) has been represented at the hearings in these proceedings, HRS has never supervised the placement of the children. At the parties’ request, the trial court has now dismissed HRS from these proceedings.
*1088 Judge Boyer entered an order of dependency in April 1992 which continued the children’s placement with the Rihas. In the dependency order, he found by clear and convincing evidence that Jeffrey Crouch has a passive/aggressive personality disorder, that he abandoned his daughters after his release from jail in 1988, and that the children would suffer “prospective abuse” which “would produce mental and emotional harm of a lasting nature, as well as possible physical harm[1]” if returned to their father.
The only evidence before the trial court on the matter at hand consists of the findings of the 1992 dependency order, and six independent reports written by five psychologists and one social worker. In their reports, the experts evaluate the girls’ mental health as recent as the summer of 1993. The reports overwhelmingly show that the girls are well integrated in the Riha family. All unequivocally recommend that the girls should not be reunited with their father. Some of them indicate that the mere thought of living with their father would cause the girls to suffer both psychological and resulting physical harm.[2]
Jeffrey Crouch did not file or present any evidence, contradictory or otherwise. No evidence regarding the details of the father’s arrest or the grounds for the suppression were presented. The 1992 order provided none of the facts or circumstances surrounding the confession. It merely recognized that the evidence presented at the adjudicatory hearing was insufficient to prove the identity of their mother’s murderer. The experts do not discuss the confession in their reports but only refer to the fact that the children believe their father murdered their mother.[3]
Although the confession was found inadmissible for purposes of obtaining a conviction in the criminal case against Jeffrey Crouch, the existence of the confession is relevant for purposes of determining whether Jeffrey Crouch’s parental rights should be terminated. Its mere existence is relevant in these proceedings as at least some external justification for the girls’ belief that their father murdered their mother.
A performance agreement must be offered to a parent before terminating parental rights. § 39.451, Pla.Stat. (1993). The goal of any agreement or plan, however, need not be reunification of the parent and child. See Warren v. Department of Health & Rehabilitative Servs., 501 So.2d 706 (Fla. 2d DCA), review denied, 508 So.2d 16 (Fla.1987); Hornback v. Department of Health & Rehabilitative Servs., 576 So.2d 416 (Fla. 3d DCA 1991). Termination of parental rights and subsequent adoption may be the goal of a plan when the return of the child to the parent would be unsafe. See § 39.451, Fla. Stat. (1993); Warren. Moreover, parental rights have been terminated based on prospective abuse or neglect. See In re interest of W.D.N., 443 So.2d 493 (Fla. 2d DCA 1984); In the interest of J.J.C., 498 So.2d 604 (Fla. 2d DCA 1986).[4] We conclude that the facts of this case establish prospective abuse, making the goal of returning the children to then-father untenable.
The plan is quashed and the case remanded for a ruling on the Rihas’ petition to *1089 terminate parental rights consistent with this opinion.
Petition for certiorari granted; order quashed.
DANAHY, A.C.J., and CAMPBELL and THREADGILL, JJ., concur.

. The order does not expound on the origin of the physical harm, i.e., whether the father might hurt the children or whether the anticipated severe psychological trauma might result in physical harm.

. One report describes the source of the physical harm as that which “would arise from the very likely prospect the children will internalize their intensely negative emotions, thus taking its toll on their physical system." Two of the reports, however, divulge that the children fear being physically harmed by their father.

. The record in a prior-filed certiorari proceeding in this court reveals that Judge Bray heard the motion to suppress the confession. That transcript was not made a part of the record in the trial court, nor has it been made a part of the record in any certiorari proceeding in this court. Nothing in the record before us indicates that either Judge Bray or the parties relied in any way on any facts which may have been divulged at the suppression hearing.

.The supreme court has not decided the issue of whether "prospective" abuse alone may support a finding of termination of parental rights. Pad-gett v. Department of Health & Rehabilitative Servs., 577 So.2d 565, 566 n. 1 (Fla.1991).