659 So.2d 1375 (1995)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, et al., Appellants,
v.
P.H., Mother, Appellee.
No. 94-2200.
District Court of Appeal of Florida, First District.
September 11, 1995.
*1376 Carol Yearwood, Dept. of Health and Rehabilitative Services, Jacksonville; Raymond I. Booth, III, of Raymond I. Booth, III, P.A., Jacksonville, for appellants.
Mark S. Kessler, Jacksonville, for appellee.

ON MOTION FOR REHEARING OR FOR CLARIFICATION
JOANOS, Judge.
The fathers of the children who are the subject of a petition for dependency seek rehearing or clarification of our opinion filed April 6, 1995, reversing the dismissal of the petition for dependency. We withdraw the prior opinion issued in this cause, deny the motion for rehearing, but grant the motion for clarification by entering this revised opinion.
The Department of Health and Rehabilitative Services (HRS) appeals an order of the circuit court dismissing a petition for dependency of P.H.'s children. We reverse.
This case involves the four children of P.H.: J.P., Jr., born May 8, 1987; M.A., born January 14, 1990; J.A., born May 14, 1991; and T.H., born November 2, 1993. On March 23, 1994, special orders for detention were filed as to all four children. On April 5, 1994, an affidavit for dependency was filed, alleging the mother's neglect and abandonment of the children, and the children's risk of prospective abuse, neglect, or abandonment. The petition further alleged the mother had never been married to the children's fathers, and due to an unwed mother's superior right of guardianship, the fathers are unable to protect the children, and neither father provides emotionally or financially for *1377 the children. Attorneys were appointed for each parent.
An adjudicatory hearing was held June 20, 1994. The mother's grandmother (the great-grandmother of the four children), testified that P.H. and P.H.'s three younger children lived with her for a year. During that time, P.H. told her grandmother that she had a drug problem and needed help. The grandmother further stated that P.H. was no longer caring for her children as she did before her drug problem. P.H. received food stamps and welfare checks for the children, but did not use either for the benefit of the children. The father of the three younger children had regular contact with them while they were in the grandmother's home, but he provided no food, money, or clothing for them.
P.H.'s aunt testified that J.P., Jr. had been in her custody for three years. During that time, P.H. did not provide regular support for J.P., Jr., or medical authorization for his treatment. J.P., Jr.'s father visited with him, but provided no support for him. The aunt said the family noticed a change in P.H. when she was pregnant with the youngest child. P.H. became moody, and failed to keep the children clean.
An HRS child protective investigator testified that she had spoken with both fathers, and asked them to contact her if they were interested in obtaining custody of their children. The investigator said neither father expressed an interest in providing a home for his child or children. One of the fathers was unemployed.
The mother's counsel moved for judgment of dismissal, on grounds that HRS failed to show the children are dependent children. The court found that a prima facie case of present neglect had been proved as to the mother, but not as to the fathers. Concluding that an adjudication of dependency required proof of current or prospective abuse, neglect or abandonment as to each parent, the court reluctantly dismissed the petition for dependency.
Section 39.01(10), Florida Statutes (1993), defining "dependent child," states in part:
(1) "Child who is found to be dependent" means a child who, pursuant to this chapter, is found by the court:
(a) to have been abandoned, abused, or neglected by his parents or other custodians.
... .
(e) To be at substantial risk of imminent abuse or neglect by the parent or parents or the custodian.
We construe the legislature's use of the disjunctive "or" to designate a single parent or parents, and the inclusion of custodians as persons whose conduct may result in a finding that a child is dependent, as indicative of legislative intent that a finding of dependency can be predicated upon the neglect of one parent, both parents, or the custodians of a minor child, depending upon the circumstances of the particular case. Case law on this subject has applied the dependency provisions in this manner. See, e.g., C.F. v. Department of Health and Rehabilitative Services, 649 So.2d 295 (Fla. 1st DCA 1995); In the Interest of J.J. and J.J., 570 So.2d 1078, 1079 (Fla. 1st DCA 1990); In the Interest of L.S., 592 So.2d 802 (Fla. 4th DCA 1992).
In this vein, the 1994 amendments to section 39.404(3)(c) state in part:
The petition need not contain allegations of acts or omissions by both parents.
The effective date of the amendment was October 1, 1994, after the hearing in this cause took place. In the order here under review, the trial court implicitly construed the amendment as effecting a change in the existing law. We disagree. We conclude the amendment merely codifies and clarifies existing law. Therefore, the subsequent clarifying language ought not be read as evidence of a lack of authority to grant a petition for *1378 dependency based upon the conduct of one parent under the earlier statute. See Keyes Investors Series 20, Ltd. v. Department of State, 487 So.2d 59, 60 (Fla. 1st DCA 1986).
The underlying facts in this case demonstrate that such a construction gives effect to the plain meaning of the language used by the legislature. The mother, P.H., has never been married to either father of her children, and apparently has never lived with either father. The record reflects that the mother has had sole custody and responsibility for all of the children, except for the three-year period that J.P., Jr. lived with the mother's aunt and uncle. The aunt testified that this arrangement began when J.P., Jr. reached school age. Since the mother has been the sole care giver and decision maker for the children, a determination of dependency based solely upon the mother's current neglect is appropriate. This is particularly true where, as in this case, the fathers of the children are unable to provide a home, guidance, and support for them, and have manifested no interest in obtaining custody of the children.[1]
The trial court's decision may have been influenced by the different standards applicable in a dependency proceeding and a proceeding to terminate parental rights. An adjudication of dependency authorizes HRS to exercise protective supervision of the minor children;[2] it does not sever all parental ties between parent and child. The parental neglect which will support a finding of dependency must be shown by a preponderance of the evidence. § 39.408(2)(b), Fla. Stat. (1993); Hardy v. Department of Health and Rehabilitative Services, 568 So.2d 1314, 1316 (Fla. 5th DCA 1990). On the other hand, in keeping with the severity of such an action, before a parent's rights "can be permanently and involuntarily severed, the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565, 571 (Fla. 1991); In the Interest of D.J.S., 563 So.2d 655, 661 (Fla. 1st DCA 1990).
In addressing the issue raised on appeal, and in ruling upon the order of dismissal, this court was required to consider the evidence introduced before the trial court on the dependency issue. This evidence included not only testimony concerning the mother, but also testimony regarding the fathers' past and prospective neglect. The record reflects that the trial court expressly inquired as to the fathers' interest in acquiring custody of their respective children, and told them how to contact the court if they were interested in acquiring custody. Five days later, at the dependency hearing, the court determined that neither father had an interest in providing a home for the children. That is, the record indicates that the court was prepared to receive evidence concerning the fathers' ability to care for their children, if they had indicated a desire to present such evidence.
Neglect is defined in section 39.01(37), Florida Statutes (1993), as occurring "when the parent ... deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment *1379 or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired." This language applies to parents who allow their child to be deprived of the essentials of life, like food, clothing, and shelter. In the Interest of D.J.S., 563 So.2d 655, 665 (Fla. 1st DCA 1990). It is not necessary for a finding of neglect that the parent have actual custody of a child. "The law imposes an equal duty on each parent for the protection, maintenance, and care of the child." Id. at 666.
The record indicates the respective fathers in this action maintained contacts with their children, but the record is clear that neither father accepted responsibility for the protection, maintenance, and care of the children. Moreover, neither father requested custody of his child (children), despite being apprised of the mother's neglect. On these facts, we conclude that HRS presented a prima facie case with respect to the fathers' neglect and prospective neglect of the children.
In summary, we hold that a finding of dependency can be predicated upon proof of neglect by one parent. The trial court's finding to the contrary constitutes a misperception of the applicable law. P.H.'s children have been fortunate to have the care and interest of concerned relatives, when their own parents failed to accept full responsibility for their needs. The record in this case reflects that the mother as custodial parent misused state assistance intended for the benefit of her children. In such circumstances, the children are entitled to the protective supervision of the department, to assure that the services and benefits available to them through the state programs are actually used for their care.
Accordingly, we reverse the order dismissing the petition for dependency, and remand the cause for further proceedings.
LAWRENCE and BENTON, JJ., concur.
NOTES
[1] In Matter of Adoption of Doe, 543 So.2d 741, 745 (Fla.), cert. denied, 493 U.S. 964, 110 S.Ct. 405, 107 L.Ed.2d 371 (1989), the court held that where an unmarried father "makes only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned."
[2] § 39.41(2)(a), Fla. Stat. (1993), provides in part:

(1)(a) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child has the power, by order, to:
1. Place the child under the protective supervision of an authorized agent of the department, either in the child's own home or, the prospective custodian being willing, in the home of a relative of the child or in some other suitable place under such reasonable conditions as the court may direct. Whenever the child is placed under protective supervision pursuant to this section, the department shall prepare a protective supervision case plan and shall file it with the court. Protective supervision continues until the court terminates it or until the child reaches the age of 18, whichever date is first.
2. Place the child in the temporary legal custody of an adult relative willing to care for the child. ....