661 So.2d 1263 (1995)
J.V., Mother of C.B.V., J.B.V., T.O.B., Children, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 94-3254.
District Court of Appeal of Florida, First District.
October 27, 1995.
Gertrude I. Kehne, Jacksonville, for Appellant.
Patricia L. Parker, Department of Health and Rehabilitative Services, Jacksonville, for Appellee.
*1264 JOANOS, Judge.
J.V. seeks certiorari review of a circuit court order approving a performance agreement which includes tasks pertaining to a child who has not been adjudicated dependent. We grant certiorari and quash the order in part.
As a preliminary matter, we have determined that this is an appropriate case in which to grant certiorari review. See Department of Health and Rehabilitative Services v. Honeycutt, 609 So.2d 596 (Fla. 1992). See also In the interest of J.Z., 636 So.2d 726 (Fla. 2d DCA 1993) (certiorari granted in part as to postdependency orders with regard to which the trial court did not follow statutory procedures); In the interest of J.A.C., 634 So.2d 1087 (Fla. 2d DCA 1993) (granting certiorari to review "performance plan").
Three of appellant's children were declared dependent in 1993; however, after the adjudication, another child was born and has not been declared dependent. On August 15, 1994, the court approved a performance agreement for the mother which included several provisions relating to the new baby. The performance agreement included a section specifically identifying the birth of the new baby as a problem to be addressed, and accordingly set forth tasks relating to that child. Among other things, J.V. was to obtain a clean and safe baby crib, secure HRS approved daycare for the new baby, follow through on all post-natal care, immunizations and doctor appointments on a timely basis, and take infant CPR classes.
Appellant objected to the conditions relating to the new baby.[1] The trial judge indicated she had considered the question whether those conditions were appropriate, and concluded: "but it also seem[s] to me if she cannot do these things for the independent it will not make her appropriate candidate for the other children." The court also addressed the objection in the written order approving the performance agreement:
Both provisions relate to the mother's ability to properly care for and supervise her newly-born infant and are thus indicators of her ability to properly parent those of her children who have been adjudicated dependent. By permitting adjudication of one child based upon the abuse, neglect or abandonment of that child's sibling, the appellate courts have recognized the relationship between a parent's ability to care for one child and that parent's ability to care for other children. The court therefore finds the permanent placement plan requirements concerning the new child to be appropriate provisions.
Section 39.451, Fla. Stat. (1993), addresses performance agreements. According to subsection (3), the performance agreement shall include but not be limited to a list of ten items; subsection (3)(d) requires the performance agreement to include "[t]he specific actions to be taken by the parent or parents of the child to eliminate or correct the identified problems or conditions which were the basis for the adjudication of dependency in involuntary placements... ." (emphasis supplied). At the hearing on the agreement, according to subsection (6)(b)2., the court shall determine if "[t]he agreement is consistent with the requirements for the content of a performance agreement as provided in subsection (3)." And according to subsection (6)(b)5., the court shall determine whether "[t]he agreement is meaningful and designed to address facts and circumstances upon which the court based the finding of dependency in involuntary placements... ." (emphasis supplied).
The major problems identified in the dependency proceedings were exposure to drug use, drug dealing, dangerous weapons, and violence, and the lack of cleanliness of the apartment. To the extent the tasks identified in the performance agreement relate to the conditions that originally led to the proceedings involving the dependent children, i.e., general cleanliness of the apartment and removal of dangerous items such as razor *1265 blades and firearms, they are appropriately included in the performance agreement. But insofar as the tasks relate only to the new baby, who has not been adjudicated dependent, and not to previously identified problems or conditions, the tasks are not authorized.
In an apparent reference to Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565 (Fla. 1991), and its progeny, the trial judge's rationale for her ruling was that the adjudication of one child may be based on proof of abuse or neglect of a sibling. In Padgett, the supreme court held that "the permanent termination of a parent's rights in one child under circumstances involving abuse or neglect may serve as grounds for permanently severing the parent's rights in a different child." Id. at 571. See also C.F. v. Department of Health and Rehabilitative Services, 649 So.2d 295 (Fla. 1st DCA 1995) (finding of dependency may be predicated on proof of neglect or abuse of sibling); In the interest of M.T.T., 613 So.2d 575 (Fla. 1st DCA 1993). A critical distinction exists, however, in that in the present case, there has been no effort to declare the new baby dependent. If a petition for dependency had been filed, under the rationale of Padgett, evidence of abuse or neglect in regard to the adjudicated children may have been supportive of the efforts to have the baby found dependent. However, as far as the record on appeal shows, no dependency petition has been filed.[2] Since there has been no effort to have the baby adjudicated dependent, we agree with appellant that the trial court was without authority to enter an order approving the performance agreement to the extent the tasks included relate solely to the unadjudicated baby.
The petition for certiorari is granted. The order approving the performance agreement is quashed in part and remanded with directions to remove from the performance agreement those tasks relating solely to the unadjudicated baby.
BOOTH and BENTON, JJ., concur.
NOTES
[1] J.V.'s attorney argued to the trial court that she had come close to satisfying the original requirements imposed upon her, only to have additional requirements imposed later on. The record indicates she had completed her parenting classes and her random drug tests were negative. She was in the process of obtaining adequate housing.
[2] One of the fathers, C.B., has filed a brief arguing that the dependency order underlying this case is defective in that it does not find dependency as to the father(s) as well as the mother. First, the underlying dependency order is not the subject of this appeal. Second, this court recently rejected C.B.'s argument in Department of Health and Rehabilitative Services v. P.H., 659 So.2d 1375 (Fla. 1st DCA 1995).